I INTRODUCTION
The defendants, Donald Cole, Sr. and Joan Cole, have moved to set aside the verdict and for judgment notwithstanding the verdict rendered on August 19, 1998, in the above captioned wrongful death case. After apportionment of liability in the manner approved by the Supreme Court in Bhinder v. Sun Co.,246 Conn. 223, 717 A.2d 202 (1998), the jury returned a verdict against Joan Cole and against Donald Cole, Sr., having found that the negligence of each of these defendants was 15 percent of the total negligence that resulted in the death of the plaintiff's decedent, Susan Rice, from gunshot wounds inflicted by Donald Cole, Jr., who was convicted of her murder.
The plaintiff withdrew her claim against Donald Cole, Jr. in the course of the trial, and the references herein to "the defendants" are to the movants only.
 II STANDARD OF REVIEW
The Supreme Court has identified the standard for setting aside a verdict in Palomba v. Gray, 208 Conn. 21, 24,543 A.2d 1331 (1988): "`[The trial court] should not set aside a verdict where it is apparent that there *Page 3 
was some evidence upon which the jury might reasonably reach their conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of the legal principles, or as to justify the suspicion that they or some of them were influenced by prejudice, corruption or partiality.' Burr v. Harty, 75 Conn. 127, 129,52 A. 724 (1902)." See also Novak v. Scalesse, 43 Conn. App. 94,103-104, 681 A.2d 968 (1996). As the Appellate Court stated inNovak, a court's discretion to set aside a verdict must give deference to the constitutional right of litigants to have issues of fact determined by a jury. Id., 104; see Young v. Data SwitchCorp., 231 Conn. 95, 100-101, 646 A.2d 852 (1994).
 III EXISTENCE OF DUTY OF CARE/PUBLIC POLICY
The sole ground for setting aside the verdict that the defendants assert in their motion is their claim that they had no cognizable duty of care. The defendants have not reflected the actual proceedings of the court, but have argued from a characterization of those proceedings that does not correspond to the evidence in the record and the charge actually given the jury. The motions imply that this court instructed the jury that the defendants had a duty to control the actions of their adult son. This was not the charge. Rather, the charge to the jury indicated that it must determine whether the defendants were in control of the premises where the murder weapon or other guns were kept, and, if so, whether they had acted negligently with regard to their duty of care toward persons coming onto the premises. (This summary is not, of course, meant as a substitute for the very detailed charge given. The text of that charge was derived extensively from the principles of law approved inStewart v. Federated Dept. Stores, Inc., *Page 4 234 Conn. 597, 662 A.2d 753 (1995) and from 2 Restatement (Second), Torts §§ 318, 442B (1965).
This court specifically did not charge that the defendants had a duty arising from a relationship of control over their son, and the movants' references to Kaminski v. Fairfield, 216 Conn. 29,578 A.2d 1048 (1990) are simply misplaced, as the charge was based not on custodial control pursuant to 2 Restatement (Second), Torts § 319 (1965), the only claimed source of duty at issue in that case, but on a duty of care of the type explicitly recognized by the Supreme Court in Stewart arising from control of the premises.
The conclusion that a duty of care existed as to any defendant that the jury found was in control of the premises where the shooting occurred is supported by the very recent decision of the Supreme Court in Mendillo v. Board of Education, 246 Conn. 456,717 A.2d 1177 (1998), in which the court summarized the approach to the recognition of a duty of care that is to be applied by trial judges. In Mendillo, the children of a woman claiming injuries resulting from a wrongful discharge from employment and intentional infliction of emotional distress claimed derivative harm for loss of parental consortium. Id., 477-96. Noting that it has recognized a duty of care to bystander relatives of injured parties in Clohessy v. Bachelor, 237 Conn. 31, 675 A.2d 852
(1996), the court set forth the analysis to be used in determining the existence of a duty of care: "The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." Mendillov. Board of Education, supra, 483, quoting R.K. Constructors,Inc. v. Fusco Corp., 231 Conn. 381, 384, 650 A.2d 153 (1994). The court applied the same formulation in Lodge v. Arett Sales Corp.,246 Conn. 563, 572, 717 A.2d 215 (1998). *Page 5 
The court in Mendillo and Lodge defined the test for the existence of a legal duty of care as an issue of foreseeability of harm paired with public policy considerations concerning the extent of the consequences that should be included in the scope of liability of a negligent party: "`We have stated that the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case. [R.K.Constructors, Inc. v. Fusco Corp., supra, 231 Conn.] 386-87.' (Internal quotation marks omitted.) Zamstein v. Marvasti,
[240 Conn. 549, 558, 692 A.2d 781 (1997).] The first part of the test involves the question of foreseeability, and the second part involves the question of policy." Mendillo v. Board of Education,
supra, 246 Conn. 483-84; Lodge v. Arett Sales Corp., supra,246 Conn. 572-73.
In Mendillo, the court found that injury to a parent could be foreseen to cause injury to a child of that parent, but, characterizing the issue as "a close one," found that "the balance of policy considerations fails to establish the additional justification necessary to support recognition of a legal duty on the part of a tortfeasor to compensate the children . . . ." Mendillo v. Board of Education, supra,246 Conn. 484-85. The court stated that it reached its public policy conclusion on the basis of [1] recognition [that] the cause of action would require arbitrary limitations [between groups of injured relatives]; [2] the additional economic burden that recognition would impose on the general public; [3] the uncertainty that recognition would yield significant *Page 6 
social benefits; [4] the substantial risk of double recovery, and [5] the weight of judicial authority. Id., 485.
Consideration of the same factors supports a conclusion that public policy is served by recognizing a duty of care by persons with control of the premises over the storage and maintenance of guns on those premises. The universe of injured persons to whom the tortfeasor would be liable is limited to a defined group: those coming onto the premises permissively. This is a narrow group, in contrast to the large and unpredictable group of relatives of direct victims, which could conceivably include parents, many children, stepchildren, and numerous close relations. The economic burden is confined, as the court inMendillo noted; id., 488 n. 22; was the case in the duty of care to bystanders recognized in Clohessy v. Bachelor, supra,237 Conn. 31, to a group of identifiable persons on the scene, not a limitless ripple effect of persons related to the victim. The third public policy consideration listed in Mendillo is met: there is a significant social benefit to be realized by recognizing a duty of the person in control of the premises to exercise due care with regard to the presence of guns on the premises. Deaths and injuries resulting from use of improperly stored and safeguarded guns are a mounting societal problem. Recognizing a duty of care in this regard on the part of landowners with control over the use of the premises serves social goals of promoting gun safety and adding to the safety of children, domestic partners, and other persons who might be in proximity to negligently kept guns.
As to the fourth policy consideration, there is no prospect of a double recovery, as was the case in Mendillo because the parent's own recovery of damages would potentially inure to the benefit of her children.
The final policy consideration, "the weight of judicial authority," discussed by the court in Mendillo v. Board *Page 7 of Education, supra, 246 Conn. 456, leads to recognition of the duty of care. The Supreme Court has recognized that entities in control of the premises have a duty of care to avoid harm to users by criminals. See Stewart v. Federated Dept. Stores, Inc.,
supra, 234 Conn. 597.
In discussing the weight of authority in Mendillo, the Supreme Court noted that the Restatement (Second) of Torts does not recognize a duty of care with regard to loss of parental consortium. The Restatement does, by contrast, recognize a duty of care to protect users of the premises from harm caused by dangerous conditions, including criminal conduct by third persons. 2 Restatement (Second), Torts, § 318 (1965). The text of that section provides: "If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor (a) knows or has reason to know that he has the ability to control the third person, and (b) knows or should know of the necessity and opportunity for exercising such control."
The evidence was such that the jury had a reasonable basis for concluding that the defendants were permitting Donald Cole, Jr. to use property that was theirs and over which they exercised close control. The conduct that the plaintiff claims was negligent was the failure to remove or require the user of the defendants' property to remove the guns. Because that person was living on the premises without paying rent and at the sufferance of the defendants as owners, the defendants could be reasonably found to have reason to know that they could impose requirements concerning the removal of guns and, given what they knew of his recent behavior, reason to know that it was necessary to *Page 8 
require the removal of guns, which were stored in an obvious location and which were readily portable. The defendants have argued that Donald Cole, Jr. had control of the premises and that he had the same status as any tenant would have with regard to control of what was kept on the premises. There was sufficient evidence from which the jury could have found that such was not the case. The dwelling in question was a small ranch house on the lot adjoining the house where the defendants lived. There was no written or oral lease; Donald Cole, Jr. paid no rent and never contributed to payment of real estate taxes. There was no evidence that he had lived anywhere except in housing supplied to him by the defendants. The defendants and other witnesses testified that the defendants had a key and used it to enter at will. Joan Cole testified that she monitored the activities at the house at least once a day. Statements by the decedent, Susan Rice, to her mother to the effect that "she's here again," referring to Joan Cole, support an inference that the constant involvement in the activities in the house and the use made of it that had been testified to by Michelle Smarz continued while Susan Rice was living with Donald Cole, Jr. The evidence also included testimony concerning Donald Cole, Jr.'s rebellion against Joan Cole's conduct in controlling events at the house he occupied while Susan Rice was in residence. The jury could reasonably have found that the arrangement was akin to the occupancy of a guest room or a guest cottage, in which the host retains the ability to set the rules as to what items can and cannot be kept on the premises.
The evidence supports a determination that Donald Cole, Jr. was a highly unstable person who abused alcohol, was violent toward his domestic partners, and had been reporting a desire to commit violent acts. The evidence further indicated that his parents furnished him with a job at the family woodcutting business and *Page 9 
that they went to get him when he failed to show up for work.
The jury's verdict is not to be reviewed according to what is usually the case when a grown child rents property owned by a parent under lease terms that give the tenant control of the premises, but according to the facts regarding actual control of the house exercised in the particular circumstances of the present case.
Consideration of the elements of a public policy determination as set fourth in Mendillo leads to the conclusion that a duty of care exists with regard to the hazard presented from negligent storage and maintenance of guns.
 IV FORESEEABILITY
The second element of the existence of a duty of care, foreseeability of the occurence of harm of the general nature at issue if the guns were not removed or required to be removed, is also met. In discussing this element of the duty of care in Lodgev. Arett Sales Corp., supra, 246 Conn. 575, the Supreme Court noted that in determining whether harm is foreseeable, the standard is whether harm of the general nature that occurred was "a reasonably foreseeable consequence of the defendants' conduct." The court stated: "[A] defendant [is] not required to take precautions against hazards [that are] too remote to be reasonably foreseeable. . . . Due care is always predicated on the existing circumstances." (Citations omitted; internal quotation marks omitted.) Id. In Lodge, the court found that, as a matter of law, it was not foreseeable that when a fire alarm sounded, the firefighters would respond by driving to the scene in a truck that was known to be defectively maintained and that the defect would cause a loss of braking ability that would result in a fatal *Page 10 
accident. The court considered the causation to be attenuated; id., 574; and deemed the risk of injury to firefighters "a harm that [the defendants] reasonably could not be expected to anticipate and over which they had no control . . . ." Id., 578. The defendants in Lodge clearly did not know about the faulty brakes or the possibility that the fire department would use a truck known to be defective, and the defendants had no control over truck maintenance or use.
By contrast, in the case before this court, the evidence included facts from which the trier of fact could conclude that there was a risk of injury of the general type that occurred to persons on the premises and that the defendants had the ability to exercise control to avoid the risk of harm. The jury was presented with evidence that the defendants knew that the occupant of their property had guns on the premises, that they had provided him with at least one of the guns, that he used the guns in hunting frequently enough that the house was decorated with numerous mounted deer heads, that they knew he had a history of domestic violence, that he had been agitated and delusional recently but had refused to seek psychiatric help when they urged it, that he had long suffered from "demons," that he had irrationally spoken of addressing a minor dispute over the return of property with violence, and that he had been arrested for the assault of Susan Rice, who had been living in the house taking care of his children, several weeks before he shot her.
There was evidence presented which, with ordinary inferences, supported a determination that the defendants treated the house as their own, used their own key to enter it at will as if it were a guesthouse or annex to their own house next door, and monitored the uses made of it on a daily basis. The defendants attempted to characterize the occupancy of Donald Cole, Jr. as a tenancy, however, there was no lease, and no rent was *Page 11 
charged or paid. The jury could reasonably have concluded that the small ranch house was an annex or guesthouse of the defendants' own home next door.
Though the defendants claim that the evidence of control related to the time when Michelle Smarz, the former wife of Donald Cole, Jr., occupied the premises, Sharon Irons testified that her daughter, the decedent, Susan Rice, had mentioned Joan Cole's very frequent monitoring activity, noting in phone calls to her mother that this defendant was "here again." The jury could have reasonably made the inference that the same exercise of control over the premises that had been the defendants' habit in earlier years continued during the time at issue. The extremely small size of the house and the defendants' knowledge of the occupant's ownership of guns and recent use of them on hunting trips supported the conclusion that the defendants were aware of the presence of the guns in the house through their daily visits.
The evidence presented supports the conclusion that Susan Rice was a person whom the defendants should have anticipated could suffer harm of the general nature of the harm that occurred. It is certainly reasonably foreseeable that a person who is behaving in a delusional, angry manner and using force against others and who is trained in the use of guns will use a readily available gun to inflict harm. The defendants' control of the premises, property owned by them and furnished by them to the shooter for no consideration that would allow him to deny their directions as to what could and could not be kept on the premises, likewise support a finding of a duty of care. As in Stewart, the defendants knew of prior recent violence on the premises, and it is not determinative that that violence involved physical abuse, but not gunshots, since the court held in Stewart that harm of the general nature is sufficient to establish *Page 12 
the scope of the risk. There is no attenuation of causation of the type present in Lodge.
The defendants have argued that recognization of a duty of care would have required them to remove not only guns but knives and other dangerous items from the house. The duty involved is a duty to take reasonable precautions. A jury may well have found that removal of items with uses other than to inflict harm or kill would not have been reasonable. Since the primary purpose of guns is to inflict harm or kill, the finding on reasonableness of efforts was justifiably different.
Finding that the evidence reasonably supports both the element of reasonable foreseeability of harm and public policy reasons for recognizing a duty of care, this court continues to believe that the duty of care that was described to the jury with regard to the premises was proper under the standard of Mendillo andLodge.
Though this court has steadfastly viewed the issue of the existence of a duty of care as a duty deriving from control of the premises, the defendants persist in ignoring the different approach the Supreme Court has taken in cases in which the duty of care proceeds from the control of the premises and a duty of care claimed to arise from control over the person who inflicts the harm. In Fraser v. United States, 236 Conn. 625, 636,674 A.2d 811 (1996), the court rejected a claim that a psychotherapist had a duty of care to control the actions of a psychiatric outpatient who had never even mentioned the person he eventually injured. A duty with regard to premises controlled by a defendant was not presented for decision in Fraser. In Kaminskiv. Fairfield, 216 Conn. 29, 578 A.2d 1048 (1990), the claim of duty of care was based solely on control of the person, and no issue of control of the premises was even raised. *Page 13 
By contrast, in Stewart v. Federated Dept. Stores, supra,234 Conn. 609-10, 613, the court recognized that the party in control of the premises had a duty to use care to prevent injury to users from the negligent or criminal conduct of others, when there was knowledge of a risk of harm from activity of the same general nature in the past. In Stewart, the court confirmed the existence of liability of an owner of a parking garage when a shopper was attacked in the garage. Id., 613. See also Bhinder v. Sun Co.,
supra, 246 Conn. 223 (apportionment of liability of negligent person in control of workplace along with negligence or intentional conduct of assailant).
This court did not charge that the defendants had a duty of care of the kind at issue in Kaminski and Fraser. Rather, the claim submitted to the jury was of the type recognized in Stewart
and Bhinder. To the extent that the plaintiff's claim differs from those cases, the analysis required in Mendillo and Lodge
leads to the conclusion that a duty of care was properly found to exist. The jury's conclusions with regard to control of the premises and with regard to breach of the duty of care was supported by the facts and by reasonable inferences derived from those facts.
The defendants have cited cases from other jurisdictions indicating that parents may be liable for harmful use of guns by their minor children, but not by adult children. In Stewart, the Supreme Court found liability for failure to make the premises reasonably safe where the perpetrator of the violence was not a minor. While control of the actions of another person and liability for those actions may depend on whether that person is a minor, control of dangerous conditions on a premises, including dangers caused by the presence of dangerous adults, had been held to be actionable in Stewart. The weight of applicable authority on the actual issue of security of the premises, both in Stewart
and § 318 of *Page 14 
the Restatement (Second) of Torts, supports the finding of a duty of care in the actual and very particular circumstances presented by this case.
 V CONCLUSION
The defendant's motions to set aside the verdict and for judgment notwithstanding the verdict are denied.