ESTATE OF Eryk T. HECK, by and through Donald HECK, the Personal Representative of the Estate of Eryk T. Heck, Appellant–Plaintiff,

v.

Raymond E. STOFFER, Patricia Stoffer and Ray Stoffer & Son Construction, Inc., Appellees–Defendants.

No. 02A03–0007–CV–267.

Court of Appeals of Indiana.

July 24, 2001.

John C. Theisen, Mark A. Garvin, Holly A. Brady, Barnes & Thornburg, Fort Wayne, IN, Attorneys for Appellant.

Jeffrey P. Smith, David K. Hawk, Hawk, Haynie, Kammeyer & Chickedantz, Fort Wayne, IN, Attorneys for Appellees Raymond E. Stoffer and Patricia Stoffer.

Thomas W. Belleperche, Brian L. England, Hunt Suedhoff Kalamaros, LLP,

Fort Wayne, IN, Attorneys for Appellee Ray Stoffer & Son Construction, Inc.

## OPINION

BROOK, Judge.

### Case Summary

Appellant-plaintiff the Estate of Eryk T. Heck ("the Estate"), by and through Donald Heck, the personal representative of the Estate, appeals the trial court's order dismissing its wrongful death action or in the alternative granting summary judgment in favor of appellees-defendants (collectively, "defendants") Raymond Stoffer ("Raymond"),[1] Patricia Stoffer ("Patricia"), and their business, Ray Stoffer & Son Construction, Inc. ("Stoffer Construction"). We affirm.[2]

### Issues

The Estate presents three issues, which we restate and reorder as follows:

I. whether the trial court erred in dismissing the Estate's complaint for failure to state a claim;

II. whether the trial court erred in denying the Estate's motion to strike the affidavits of Raymond and Patricia or in denying the accompanying request for sanctions; and

III. whether the trial court erred in granting summary judgment to Raymond, Patricia, and Stoffer Construction.

Because our resolution of the first issue is dispositive, the only other issue we address is whether the denial of sanctions was appropriate.

1. Raymond passed away on December 7, 2000.

2. We thank counsel for their time and effort in preparing for and engaging in the April 12, 2001 oral argument of this matter.

### Facts and Procedural History

Timothy Stoffer ("Timothy"), the son of Raymond and Patricia, began working for Stoffer Construction[3] in the mid 1980s, when he was fifteen or sixteen years old. Although he worked for Stoffer Construction continuously for approximately the next eleven years, his employment was sporadic. Oftentimes Timothy was unavailable for work because he was in jail or prison or simply failed to report. During the years he worked for Stoffer Construction, Timothy was convicted of and/or charged with burglary, theft, forgery, escape, three counts of resisting law enforcement, possession of hashish, domestic battery, check deception, battery, non-support, and aiding forgery. He also stole over $8,000 from his grandfather by using his credit card, but Raymond and Patricia chose not to report it. Timothy was an abuser of alcohol and illegal narcotics, and as a result of this and his criminal activities, he was ordered to seek drug and alcohol counseling. His parents were aware of his legal entanglements, emotional and/or mental disturbance, his need for counseling, and the danger that he posed to others in the community.

During the winter of 1996 to 1997, Timothy lived at his parents' lake house to avoid law enforcement authorities. In February 1997, Raymond received information that the police had placed a tracking device on Timothy's truck, which was insured and used for work by Stoffer Construction. When Raymond told Timothy of the device, Timothy responded that he already knew of it. Between April and July of 1997, Timothy was charged with aiding forgery, had his probation revoked,

3. Stoffer Construction's office was located within Raymond and Patricia's house.

entered a guilty plea to a charge of resisting law enforcement, and pled guilty to felony non-support. A sentencing hearing was scheduled for August 14, 1997, but Timothy failed to appear. During the summer of 1997, Raymond sensed that Timothy was .feeling the pressure of his mounting legal problems, and Raymond believed that Timothy was going to flee the area.

On August 15, 1997, then-twenty-seven-year-old Timothy, without his parents' knowledge, took a handgun from their house and used it to shoot and kill Eryk Heck ("Heck"), a deputy with the Allen County Sheriff's Department. Timothy was also killed during this shooting incident.

On July 27, 1999, the Estate filed a wrongful death action against Raymond, Patricia, and Stoffer Construction. On September 27, 1999, Stoffer Construction filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and Designation of the Record." A couple weeks later, Raymond and Patricia filed a separate "Motion to Dismiss for Failure to State a Claim or, Alternatively for Summary Judgment." Neither Stoffer Construction nor Raymond and Patricia filed an answer. On December 2, 1999, the Estate filed a motion for enlargement of time to respond. On January 14, 2000, after a hearing, the trial court found that the Estate's motion was untimely and precluded it from filing any evidence in opposition to the motions to dismiss/for summary judgment. That same day, the Estate filed an amended complaint, which the defendants also did not answer.

On February 3, 2000, Raymond and Patricia filed a "Motion to Dismiss Amended Complaint for Failure to State a Claim," and Stoffer Construction filed a "Second Motion to Dismiss, or in the Alternative,

Motion for Summary Judgment." On March 28, 2000, the Estate filed a motion to strike the first motions to dismiss/for summary judgment. On April 10, 2000, the Estate filed a motion to strike the affidavits of Raymond and Patricia and filed a memorandum of law in opposition to the defendants' first motions to dismiss/for summary judgment. Four days later, Raymond and Patricia filed a motion to strike the Estate's motion to strike their affidavits. That same day, after holding a hearing on the pending motions, the trial court requested that counsel provide supplemental briefing on the issues of duty and proximate cause. On April 28, 2000, the parties filed their supplemental briefs.

On May 1, 2000, the Estate filed a memorandum in opposition to Stoffer Construction's second motion for summary judgment. On May 9, 2000, the Estate filed a memorandum of law in opposition to the motion to strike the Estate's motion to strike the affidavits. In late May 2000, the parties filed their respective proposed findings. In a June 26, 2000 order, the trial court denied the Estate's motion to strike the first motions to dismiss/for summary judgment and granted the defendants' motions to dismiss the Estate's amended complaint with prejudice. Alternatively, the trial court denied the Estate's motion to strike Raymond's and Patricia's affidavits, found that the motion for summary judgment filed in response to the Estate's original complaint was applicable to the Estate's amended complaint, and granted summary judgment to Stoffer Construction, Raymond, and Patricia.

## Discussion and Decision

### I. Motion to Dismiss

In challenging the trial court's dismissal of its complaint, the Estate makes two main arguments. First, it contends that the trial court's determination that an

owner or possessor of a handgun[4] has no duty to exercise ordinary care in its storage and safekeeping is contrary to prior decisions, public policy, and the common understanding of reasonable persons.[5] Second, the Estate asserts that its amended complaint should not have been dismissed for failure to state a claim arising from a duty to control Timothy's conduct. The Estate urges that it cannot be said with certainty that it can prove no set of facts entitling it to relief under a duty-to-control theory.

We recently set out the proper standard of review for dismissals:

When reviewing the dismissal of a complaint for failure to state a claim under T.R. 12(B)(6), this court views the pleadings in a light most favorable to the plaintiffs and draws every reasonable inference in favor of the plaintiffs. This court will not assess the sufficiency of facts supporting the complaint, but determines if the complaint states any set of allegations upon which the trial court could grant relief. "To state a claim for relief, a complaint need only contain (1) a short and plain statement of the claim and (2) a demand for relief. *See* Ind. Trial Rule 8(A)." The rules of procedure, based on notice pleading, do not require a complaint to state all elements of a cause of action. Therefore, a T.R. 12(B)(6) motion should be granted only where it is clear on the face of the complaint that under no circumstances could relief be granted.

A successful T.R. 12(B)(6) motion will be affirmed on appeal when a complaint states a set of facts and circumstances, which, even if true, would not support the relief requested.

*Meury v. Eagle–Union Cmty. Sch. Corp.,* 714 N.E.2d 233, 238 (Ind.Ct.App.1999) (citations omitted), *trans. denied.*

For a plaintiff to prevail on a claim for negligence, she must show (1) that the defendant owed her a duty to exercise reasonable care; (2) that the defendant breached that duty by failing to conform its conduct to the requisite standard of care; and (3) that the plaintiff sustained injuries that were the proximate result of the defendant's breach. *Fast Eddie's v. Hall,* 688 N.E.2d 1270, 1272 (Ind.Ct.App.1997), *trans. denied.* "The duty, when found to exist, is the duty to exercise reasonable care under the circumstances. The duty never changes. However, the standard of conduct required to measure up to that duty varies depending upon the particular circumstances." *Stump v. Indiana Equip. Co.,* 601 N.E.2d 398, 402 (Ind.Ct.App.1992), *trans. denied* (1993). "[A]bsent a duty, there can be no negligence." *Fast Eddie's,* 688 N.E.2d at 1272.

"The existence of a duty is a question of law for the court." *Barnes v. Antich,* 700 N.E.2d 262, 266 (Ind.Ct.App. 1998), *trans. denied.* "The court balances three factors in determining whether a duty exists: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3)

4. The Estate characterizes the trial court's holding as applicable to an owner or possessor of a *loaded* handgun, but the amended complaint does not assert that the handgun was loaded when Timothy allegedly removed it from his parents' home.

5. In its amended complaint, the Estate alleged that defendants "had a duty to know the whereabouts of and to maintain control over and to otherwise exercise reasonable care with respect to, the handgun used to kill Officer Heck" and "a duty to ensure that [Timothy] did not gain access to the handgun used to kill Officer Heck." Under our concept of negligence, we are unaware of any duty to ensure that any certain thing does not occur.

public policy concerns." *Id.* We look at the three factors in turn. As the Estate admits in its reply brief, whether an owner or possessor of a loaded handgun has a duty to exercise ordinary care in its storage or safekeeping is an issue of first impression in Indiana.[6]

■■■ "In determining whether a relationship exists that would impose a duty, we must consider the nature of the relationship, a party's knowledge, and the circumstances surrounding the relationship." *Downs v. Panhandle E. Pipeline Co.*, 694 N.E.2d 1198, 1203 (Ind.Ct.App.1998), *trans. denied.* The Estate does not assert a relationship between Heck and Raymond and Patricia, let alone between Heck and Stoffer Construction, but rather argues in terms of Raymond and Patricia's relationship to the public. Specifically, the Estate proposes, "the owner or possessor of a gun owes a duty to the public to exercise at least ordinary care . . . with respect to the storage and safekeeping of the gun." Finding no Indiana cases to support its proposition, the Estate cites Indiana cases discussing the duty of reasonable care in other contexts. *See, e.g., Serviss v. Dep't of Natural Res.*, 721 N.E.2d 234, 237 (Ind. 1999) (duty of public park to exercise reasonable care in the maintenance of a sledding hill); *Benton v. City of Oakland,* 721 N.E.2d 224, 232 (Ind.1999) (duty of city to warn of the danger of diving in a particular area of a lake controlled by the city); *Hooks SuperX, Inc. v. McLaughlin,* 642 N.E.2d 514, 519 (Ind.1994) (duty of pharmacist to exercise that care which an ordinarily prudent pharmacist would exercise under similar circumstances); *Plesha v.*

*Edmonds,* 717 N.E.2d 981, 988 (Ind.Ct. App.1999) (duty of dog owner to exercise reasonable care with respect to the dog, even when the owner is unaware of any vicious or dangerous propensity), *trans. denied; Goldsberry v. Grubbs,* 672 N.E.2d 475, 480 (Ind.Ct.App.1996) (duty of telephone companies to exercise reasonable care when placing telephone poles along highways), *trans. denied* (1999); *MacDonald v. Maxwell,* 655 N.E.2d 1249, 1251 (Ind.Ct.App.1995) (duty of church custodian to use reasonable care in waxing a floor).

While we understand the Estate's advocation of a broad definition of duty in the instant case, we note that the above cases are markedly different in that they do not involve a constitutionally protected right. Moreover, these cases concern places or situations of a decidedly more public dimension than a person's home and home office.[7] Finally, we observe that while Raymond and Patricia knew about Timothy's "violent and criminal tendencies [and] his emotional and/or mental disturbance," the Estate does not allege that they knew that Timothy was aware of the existence, let alone the whereabouts, of the handgun used to kill Heck. Thus, the pleaded facts regarding the relationship between the parties in the instant case do not support a finding of a duty to safely store a gun.

■■■ In analyzing the foreseeability component of duty, we must focus on whether the "person actually harmed was a foreseeable victim and whether the type of harm actually inflicted was reasonably foreseeable." *Kottlowski v. Bridgestone/Firestone, Inc.,* 670 N.E.2d 78, 85

---

6. For purposes of reviewing the dismissal of the complaint for failure to state a claim, we may assume that the issue involves storage or safekeeping of a loaded handgun because the complaint is susceptible to presentation of evidence of that fact.

7. Even in *Plesha,* where a dog attacked a boy in a field leased and controlled by the private defendants, "[t]here were no markers identifying the boundary . . . and the neighborhood children regularly traversed the open field to reach the park." *Plesha,* 717 N.E.2d at 984.

(Ind.Ct.App.1996), *trans. denied.* "To a great extent, duties are defined by the foreseeability of relevant harms." *Id.* The Estate asserts that "[i]mminent danger and severe risk of physical harm are, at all times, a 'part of the constitution of' a loaded handgun."[8] However, "[t]he *duty of reasonable care is not owed to the world at large* but is limited to those who might reasonably be foreseen as being subject to injury by the breach of the duty." *Id.* (emphasis added); *see also Webb v. Jarvis,* 575 N.E.2d 992, 997 (Ind.1991) ("The duty of reasonable care is not, of course, owed to the world at large."). The Estate repeatedly mentions Timothy's history of violent behavior, specifically toward police officers, and his fugitive status at the time of the shootout, but we cannot conclude that Heck, more than any member of the general public, might reasonably be foreseen as being subject to injury by any breach of Raymond and Patricia's alleged duty to safely store a gun. *See Goldsberry,* 672 N.E.2d at 479 ("[T]he foreseeability component of proximate cause requires an evaluation of the facts of the actual occurrence, while the foreseeability component of duty requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence."); *see also Indiana Limestone Co. v. Staggs,* 672 N.E.2d 1377, 1382 (Ind.Ct.App.1996) ("Such foreseeability does not mean that the precise hazard or exact consequences should have been foreseen, but neither does it encompass anything which might occur."), *trans. denied* (1999).

▪▪▪ A foreseeability argument is even more tenuous where, as here, a third party is involved. We have stated: "As a general rule, when an instrumentality passes from the control of a person, his responsibilities for injuries inflicted by it ceases." *Johnson v. Patterson,* 570 N.E.2d 93, 96 (Ind.Ct.App.1991). "An exception exists where the instrument is entrusted to one who is incompetent or irresponsible or who lacks the capacity to safely use or operate the instrumentality." *Id.* Negligent entrustment consists of: "1) an entrustment, 2) to an incapacitated person or one who is incapable of using due care, 3) with actual and specific knowledge that the person is incapacitated or incapable of using due care at the time of the entrustment, 4) proximate cause, and 5) damage." *Id.* at 97. Because there is no allegation of entrustment of the gun by Raymond and Patricia, or Stoffer Construction, to Timothy, the negligent entrustment exception does not apply.

▪▪▪ In discerning public policy, we look to federal and state constitutions, the legislature, and the judiciary.[9] *See Trotter v. Nelson,* 684 N.E.2d 1150, 1152–53 (Ind. 1997); *Creasy v. Rusk,* 730 N.E.2d 659, 664 (Ind.2000) ("To assist in deciding whether Indiana should adopt the generally accepted rule, we turn to an examination of contemporary public policy in Indiana as embodied in enactments of our state legislature."); *see also Stump v. Commercial Union,* 601 N.E.2d 327, 332 (Ind.1992) (stating "public policy considerations further augment the relationship and foreseeability factors, particularly in view of the strong Indiana policy value embodied in the previously noted constitutional right").

▪▪▪ Article I, Section 32 of the Indiana Constitution provides: "Right to bear arms. The people shall have a right to bear arms, for defense of themselves

---

8. Again, we note that the Estate did not assert that the handgun was loaded when Timothy allegedly removed it from his parents' home.

9. Although judicial decisions also can provide insight into public policy, no Indiana case law exists on this particular issue.

and the State."[10] "[T]his right of Indiana citizens to bear arms for their own self-defense and for the defense of the state is an interest in both liberty and property which is protected by the Fourteenth Amendment to the Federal Constitution." *Kellogg v. City of Gary*, 562 N.E.2d 685, 694 (Ind.1990).

> This interest is one of liberty to the extent that it enables law-abiding citizens to be free from the threat and danger of violent crime. There is also a property interest at stake, for example, in protecting one's valuables when transporting them, as in the case of a businessman who brings a sum of cash to deposit in his bank across town.

*Id.* The constitutional right to bear arms is not absolute. *Dozier v. State*, 709 N.E.2d 27, 31 (Ind.Ct.App.1999). Our supreme court has determined that "[t]he Legislature has the power, in the interest of public safety and welfare, to provide reasonable regulations for the use of firearms which may be readily concealed, such as pistols." *Matthews v. State*, 237 Ind. 677, 686, 148 N.E.2d 334, 338 (1958) (rejecting an Art. I, § 32 challenge to handgun legislation). Indeed, our legislature has enacted a plethora of statutes concerning handguns and other firearms. *See, e.g.,* IND. CODE § 35–47–2.5–1 *et. seq.* (regulating handgun sales, licenses, permits, recording, etc.); *id.* § 35–50–2–13 (one of numerous statutes providing additional fixed term of imprisonment for using/possessing a handgun while committing an offense, here, dealing in a controlled substance); *id.* § 34–26–2–12 (protective order prohibiting possession of a firearm); *id.* § 35–42–2–2 (recklessness includes shooting firearm from a vehicle); *id.* § 35–47–4–5 (pro-

hibiting possession of firearm by serious violent felon).

■■■ Despite the numerous legislative restrictions upon firearms, the right to keep a gun at home or at one's place of business is largely unregulated. *See, e.g., id.* § 35–47–2–1 (providing "a person shall not carry a handgun in any vehicle or on or about his person, *except in his dwelling, on his property or fixed place of business,* without a license") (emphasis added). Our legislature has not promulgated statutes specifying how gun owners must store or keep a gun in their dwellings or fixed places of business. While storing a gun and ammunition in separate locked cabinets, as responsible gun owners often do, is certainly safer than leaving these items out in the open, doing so clearly renders that same gun less accessible when urgently needed for defending one's person or property. Perhaps this simple reality, coupled with the longstanding and largely unfettered right to bear arms, explains the current dearth of legislation concerning the storage and safekeeping of guns.

■■■ "Duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." *Kottlowski*, 670 N.E.2d at 85. Like both the relationship and the foreseeability factors, the public policy factor does not support the imposition of a duty to store and keep guns safely under the facts pleaded in the instant case. Accordingly, we conclude that the defendants did not owe Heck a duty to safely store and keep the gun at issue. Because "absent a duty, there can be no negligence," *Fast Eddie's*, 688 N.E.2d at 1272, we must conclude that the trial court correctly granted the motions to dismiss the Es-

---

**10.** The federal corollary to the state right to bear arms is found within the Second Amendment to the U.S. Constitution ("A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.").

tate's claim under an alleged duty to safely store and keep a gun.

We next turn to the Estate's assertion that its amended complaint should not have been dismissed for failure to state a claim arising from a duty to control Timothy's conduct. The Estate gives scant attention to this argument in its appellant's brief, stating:

> The majority of the trial court's analysis on the issue of "duty" is devoted to establishing that [the Estate's] amended complaint fails to state a claim for negligence on the part of the defendants in failing to control the conduct of [Timothy]. *Since such a claim has not been raised by the Estate of Heck,* and such a defense was not the basis for the defendants' motions, the trial court's analysis is irrelevant.

Appellant's brief at 34 (emphasis added). In a footnote, the Estate argues in the alternative that it cannot be said that it appears to a certainty that no such relationship existed.

In its reply brief, the Estate contends:

> The issue of negligence on the part of the defendants arising from a duty to control the conduct of Timothy Stoffer is not one of first impression. As the defendants' briefs demonstrate, the law in this area is well-developed. The only pertinent question is whether, under Indiana's pleading standards, it can be said that it "appears to a certainty" or "beyond doubt" that the Estate of Heck can prove no set of facts that would entitle it to relief under such a theory.

Without delving into any duty-to-control case law, the Estate takes issue with the argument that its amended complaint alleges only nonfeasance and that therefore the Estate "must also allege some 'special relationship' between the plaintiff and the defendant giving rise to a duty to" control the conduct of a third person. *See Estate of Cummings v. PPG Indus., Inc.,* 651 N.E.2d 305, 309 (Ind.Ct.App.1995), *trans. denied.* The Estate notes that its amended complaint alleged, "the defendants, as owners or possessors of a loaded handgun, had a duty to exercise reasonable care in the storage and safekeeping of the handgun, and that they failed to do so under the circumstances presented to them." The Estate characterizes this as misfeasance and contends that as such, it does not require an allegation of a special relationship between the defendants and Heck. The Estate asserts that certain facts,[11] as well as those that might be gleaned from further discovery, preclude the defendants from demonstrating to a certainty that the Estate can prove no set of facts that would entitle it to relief under a duty-to-control theory.

In view of the Estate's admission that it did not raise a duty-to-control issue and its failure to flesh out its argument or discuss any case law regarding a duty to control another's conduct, we could conclude that it has waived this issue on appeal. *See Marsh v. Dixon,* 707 N.E.2d 998, 999–1000 (Ind.Ct.App.1999) (citing Ind. Appellate Rule 8.3 [12] and finding argument waived where party cites "no cases and outline[s] no argument developing" a position), *trans. denied.* Even if we overlook the brief's deficiencies, we conclude that there

---

11. These facts are that Raymond and Patricia permitted Timothy to "hide out" at their lake cottage; that Raymond told Timothy of a police investigation that included the tracking device; that Raymond and Patricia did not notify authorities when Timothy used his grandfather's credit card without authorization; and that they allowed Timothy to be termed a full-time worker despite his sporadic schedule.

12. Now Ind. Appellate Rule 46.

was no misfeasance because the defendants owed Heck no duty to safely store the gun. Hence, the Estate's contention that it need not allege a special relationship between the defendants and Heck is unavailing. Accordingly, we examine the special relationship issue.

 "When addressing the duty to control the conduct of others, the courts of Indiana generally follow the principles set forth in the Restatement (Second) of the Law on Torts." *Bowling v. Popp*, 536 N.E.2d 511, 515 (Ind.Ct.App.1989); *see, e.g., Sports, Inc. v. Gilbert*, 431 N.E.2d 534 (Ind.Ct.App.1982). The basic principle of this duty is stated as follows:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

RESTATEMENT OF THE LAW OF TORTS § 315 (2d ed.1965). The specific duties that make up the basic principle are:

> (1) The duty of a parent to control the conduct of his child;
>
> (2) The duty of a "master" to control the conduct of his "servants";
>
> (3) The duty of a possessor of land or chattels to control the conduct of his licensee;
>
> (4) The duty of those in charge of persons having dangerous propensities to control such persons; and
>
> (5) The duty of those having custody of another to control the conduct of others.

*Campbell v. Bd. of Trs. of Wabash Coll.*, 495 N.E.2d 227, 231–32 (Ind.Ct.App.1986) (citing RESTATEMENT §§ 316–20).

 "In all of the cases imposing liability for the failure to control the conduct of a third party, there are similar factors supporting the imposition of a duty." *Sports*, 431 N.E.2d at 538. There is a dependency, that is, a person in need of special supervision or protection from someone who is in a superior position to provide it. *See id.* For example, a child or a business invitee could be dependent upon a parent or a business owner, respectively. *Id.* "The other part of this special relationship is the right to intervene or control the actions of a third person." *Id.* "We know of no case from any jurisdiction which imposes a duty to control a third person when no right to control exists." *Id.*

 In its amended complaint, the Estate alleged the following:

> 4. Timothy ... had a lengthy and well-known history of violent and criminal activity, including prior acts of violence against women and police officers.
>
> 5. Timothy ... had an extensive criminal background including, but not limited to, multiple charges of battery, resisting law enforcement, burglary, possession of hashish and forgery.
>
> 6. As a result of [Timothy's] convictions arising from his criminal activities, he was incarcerated in Indiana Department of Correction.
>
> 7. Timothy ... was an abuser of alcohol and illegal narcotics and, as a result of this and his criminal activities, he was also ordered to seek drug and alcohol counseling from the Washington House and counseling with Brown and Associates.
>
> 8. The Defendants were aware of [Timothy's] violent and criminal tendencies, his emotional and/or mental disturbance, his criminal convictions, his incarceration, his need for counseling in general

and for drug and alcohol abuse, specifically, and the danger that he posed to others in the community.

9. The Defendants did not take reasonable steps to secure the handgun from [Timothy].

10. Instead, and despite their knowledge of [Timothy's] criminal and violent propensities, his instability, and the danger that he posed to others, the Defendants provided [Timothy] with free and unfettered access to their home/office where the handgun was kept.

11. The Defendants had a duty to know the whereabouts of and to maintain control over and to otherwise exercise reasonable care with respect to, the handgun used to kill Officer Heck.

12. Because [Timothy] had criminal and violent tendencies, had a history of instability and was known to be a danger to others, the Defendants had a duty to ensure that [Timothy] did not gain access to the handgun used to kill Officer Heck.

13. The Defendants breached their duty to know the whereabouts of and to maintain control over the handgun by allowing [Timothy] access to the handgun and by failing to realize that the handgun used to kill Officer Heck was missing.

That is, the Estate alleged no relationship, special or otherwise, between Heck and Timothy's parents or between Heck and Stoffer Construction that would give Heck a right to protection. Similarly, the Estate alleged no special relationship between Timothy and his parents that would impose a duty upon Raymond and Patricia to control Timothy's conduct. Without such allegations, the dismissal of the duty-to-control issue was appropriate. *See J.A.W. v. Roberts*, 627 N.E.2d 802, 809 (Ind.Ct.App.1994) ("Absent a special relationship between a plaintiff and a defendant, we will not impose a duty on the defendant to take affirmative steps to prevent harm to the plaintiff.").[13]

## II. Sanctions

Raymond and Patricia submitted two sets of affidavits: one set in support of Stoffer Construction's motion for summary judgment and one set in support of their individual motion for summary judgment. The Estate contends that the statements made in the affidavits were incomplete, misleading, and demonstrably false, thus supporting a Trial Rule 56(G) claim for sanctions.

■ Trial Rule 56(G) provides:

Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

---

13. Incidentally, mere familial relationship between an adult and his parents is insufficient to establish a duty to control. *See, e.g., Stocker v. Cataldi*, 483 N.E.2d 461, 463 (Ind.Ct.App.1985). Moreover, an employer is not liable for the wrongful acts of its employees unless they are committed within the scope of employment. *See Southport Little League v. Vaughan*, 734 N.E.2d 261, 268 (Ind.Ct.App. 2000) (noting that "simply because an act could not have occurred without access to the employer's facilities does not bring it within the scope of employment") (footnote omitted), *trans. denied*. Further, landowner liability focuses upon injuries that occur on the landowner's premises, which was clearly not the situation here. *See Delta Tau Delta, Beta Alpha Chapter v. Johnson*, 712 N.E.2d 968, 971 (Ind.1999).

"This rule should be strictly enforced to preserve the intent and purpose of the summary judgment proceedings." *GDC Envtl. Servs. v. Ransbottom Landfill,* 740 N.E.2d 1254, 1261 (Ind.Ct.App.2000) (holding that we could not say that the trial court abused its discretion in granting sanctions where affiant's affidavit *clearly* contradicted a sworn statement in his earlier deposition).

■ Courts have not construed "bad faith" as used in Trial Rule 56(G). However, in other contexts, it has been defined as "the absence of good faith," that is, "not simply bad judgment or negligence" but "the conscious doing of a wrong because of dishonest purpose or moral obliquity"; "a state of mind affirmatively operating with furtive design or ill will." *See Figg v. Bryan Rental, Inc.,* 646 N.E.2d 69, 76 (Ind.Ct.App.1995), *trans. denied.* Having reviewed the affidavits submitted by Raymond and Patricia on behalf of Stoffer Construction, we agree that they are problematic. That said, we are not inclined to conclude that they definitively met this demanding standard and that the trial court therefore abused its discretion by not awarding sanctions. Further, the Estate has not shown that the court relied upon those affidavits in making its decision.[14] Accordingly, the Estate did not suffer prejudice, which provides additional support for our conclusion that the court did not abuse its discretion by not awarding sanctions. As for the affidavits submitted by Raymond and Patricia on their own behalf, the alleged inconsistencies were sufficiently explained such that we cannot conclude that the court abused its discretion in not awarding sanctions.

Affirmed.

BAKER, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

Although I concur with respect to Part II, I respectfully dissent as to Part I.

Justice Dickson, speaking for the court in *Gariup Construction Co., Inc. v. Foster,* 519 N.E.2d 1224, 1227 (Ind.1988) noted that the duty determination is made "not without difficulty", and, in quoting from a well-regarded treatise, concluded that " '[n]o better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists.' " *See* Jay Tidmarsh, *Tort Law: The Languages of Duty,* 25 Ind. L.Rev. 1419 (1992).

It is for this reason, perhaps, that we have in the past articulated the principle that: "The Law imposes but one common law duty and that duty is to use due care (citation omitted). The duty is the same for all relations, without regard to the facts of the case." *South Eastern Indiana Natural Gas Co., Inc. v. Ingram* 617 N.E.2d 943, 953 (Ind.Ct.App.1993).

As a corollary to this premise we have said:

"[T]he substantive law establishes the standard of care which must be met, i.e., reasonable care. The standard is a fixed one and is independent of the conduct of others but the conduct required

---

14. Stoffer Construction argued, "any alleged discrepancies pointed out by the Estate were not material to the outcome of the case." The Estate urged that this response was spurious in light of the court's parenthetical note on page nine of its order: "See, Affidavits of Raymond Stoffer and Patricia Stoffer designated in support of their motion for summary judgment." However, the court's statement could be read as referring to the affidavits submitted by Raymond and Patricia on their own behalf.

of the individual to measure up to the fixed standard varies depending upon the nature of the duty owed and the surrounding circumstances." *Walters v. Kellam & Foley*, 172 Ind.App. 207, 360 N.E.2d 199, 214 (1977).

In short, the duty is that of reasonable care under the circumstances. That duty never changes. It always exists although the circumstances may differ from case to case.

In this case, defendants had a duty to exercise reasonable care under the circumstances. Those circumstances include knowledge of Timothy's mental state, his unrestricted access to the house and office and his strong desire and past efforts to avoid law enforcement, including the strong probability that he would attempt to resist such law enforcement. The defendants also knew of Timothy's proclivity to break the law. In this latter regard, Raymond and Patricia took extra steps to restrict Timothy from access to the company checks so that they "wouldn't be a temptation" to him. Record at 605. Thus, it is clear that defendants were conscious of Timothy's conduct *vis a vis* past violations of the law, including forgery and theft. In making the checks unavailable to Timothy, they took appropriate precautions to dissuade future forgeries and in doing so exercised reasonable care in that context.

They did not, however, exercise the requisite degree of similar care with regard to the handgun. The defendants were certainly aware of a duty to take precautions against discovery and use of the gun by persons who were present in the house, i.e., their grandchildren, and that Raymond did, in fact, exercise a degree of reasonable care by hiding the gun in the attic when those persons were on the premises.[15]

15. *See Reida v. Lund*, 18 Cal.App.3d 698, 96 Cal.Rptr. 102 (1971) (reversing summary judgment for parents of sixteen-year-old son who gained access to rifle and used it to shoot motorists; jury question as to whether it was negligent to store rifle together with sack of ammunition in locked cabinet where sixteen-year-old knew of location of key to cabinet); *Seabrook v. Taylor*, 199 So.2d 315 (Fla.App. 1967) (finding defendant negligent for keeping a loaded .22 caliber pistol, which was used by fourteen-year-old child in an intentional shooting, in the closet of bedroom), *cert. denied*; *Jacobs v. Tyson*, 200 Ga.App. 123, 407 S.E.2d 62 (1991) (twelve-year-old retrieved loaded pistol from unlocked dresser drawer), *cert. denied*; *Wroth v. McKinney*, 190 Kan. 127, 373 P.2d 216 (1962) (plumber, accompanied by his four-year-old son, went on a service call to defendant's home; plumber was accustomed to bringing his son with him to defendant's house; while plumber worked, child discovered loaded revolver on top of a dresser in defendant's bedroom and fatally shot himself in the head; held trial court properly overruled defendant's demurrer; "it is well settled that one who has in his possession, or under his control, an instrumentality exceptionally dangerous in character is bound to take exceptional precautions to prevent an injury being done thereby"; the court has long adhered to the position that "the highest degree of care" is imposed on persons owning or possessing dangerous instrumentalities such as firearms); *Spivey v. Sheeler*, 514 S.W.2d 667 (Ky.1974) (reversing a directed verdict in favor of parents of eleven-year-old boy who gained access to a .25 caliber pistol from a locked gun cabinet and accidentally shot a playmate; son was in the family home with friends after school, stopped to examine a locked glass-fronted gun cabinet containing several guns, climbed on something and obtained a key from the top of the cabinet, unlocked cabinet, passed around several guns, removed the .25 caliber pistol and, waving it around, pulled the trigger discharging the pistol and wounding his friend; stating that guns are highly dangerous instrumentalities and that the propensity of young boys to be attracted to guns is a matter of common knowledge; held that reasonable persons would not be precluded from finding negligence on the part of parents); *Cathey v. Bernard*, 467 So.2d 9 (La.Ct.App.1985) (nine-year-old boy gained access to a loaded pistol stored by his parents on a high shelf in the

I fail to discern any difference between the duty owed and met, when the grandchildren might gain access to the firearm, and that owed when a mentally disturbed, habitual and violent offender has free access to the premises. In my view, the defendants had a clear duty to exercise reasonable care with regard to the availability of the gun. *See Irons v. Cole*, 46 Conn.Supp. 1, 734 A.2d 1052 (1998) (parents had duty of care as to firearms kept by adult son on premises which they controlled); *Foster v. Arthur*, 519 So.2d 1092 (Fla.Dist.Ct.App.1988) (plaintiff shot by gun taken by owner's roommate from under mattress in unlocked room); *Edmunds v. Cowan*, 192 Ga.App. 616, 386 S.E.2d 39 (1989) (son took father's "unsecured" pistol and shot police officer), *cert. denied.*[16]

The duty of reasonable care is owed to persons who foreseeably might be injured by unauthorized possession and use of the gun. Deputy Heck was just such a person. He was a law enforcement officer presenting a real or imagined threat to Timothy and who might foreseeably become a victim (as he did) of Timothy's efforts to resist arrest and flee. In this regard, the parents were aware of past resisting law enforcement offenses.

The majority appropriately cites to *Goldsberry v. Grubbs*, 672 N.E.2d 475 (Ind.Ct.App.1996), *trans. denied*, which analyzed and applied the three-factor test set forth in *Webb v. Jarvis*, 575 N.E.2d 992 (Ind.1991), *reh'g denied*. *Goldsberry* held that it is foreseeable, in the context of duty as opposed to proximate cause, that a motorist would leave the highway and strike a utility pole thereby giving rise to liability upon the part of the utility company with

closet and used it to accidentally shoot and kill a six-year-old who was living in the home as a foster child; child had been instructed never to go near the firearm, and no evidence of disobedience until the incident; deceased child's mother sued foster parents, alleging they failed to take reasonable precautions to keep the gun away from children; appellate court held that parents had a duty of extraordinary care with respect to controlling access to the firearm, which it determined was breached by leaving the pistol where it was accessible to children); *Taylor v. Webster*, 12 Ohio St.2d 53, 231 N.E.2d 870 (1967) (holding that proximate cause and reasonable foreseeability were factual issues for the jury to resolve where defendant unlawfully and negligently permitted ten-year-old son to use air gun with pellets, knowing that he had playmates, and realized that his possession of gun might have injurious consequences, and playmate took and discharged gun at plaintiff, another playmate, thereby damaging plaintiff's eye); *Thomas v. Inman*, 282 Or. 279, 578 P.2d 399 (1978) (holding owner liable for loaded shotgun kept under bed); *Kuhns v. Brugger*, 390 Pa. 331, 135 A.2d 395 (1957) (holding grandfather liable for injuries inflicted by twelve-year-old grandchild with a loaded gun found in an unlocked dresser drawer); *Stanley v. Joslin*, 757 S.W.2d 328 (Tenn.Ct.

App.1987) (finding owner-grandmother negligent in storing unloaded rifle and cartridges for rifle in gun rack).

**16.** Some jurisdictions have established that firearms require a higher standard of care than "reasonable care." *See Jacoves v. United Merch. Corp.*, 9 Cal.App.4th 88, 11 Cal. Rptr.2d 468 (1992) (civil law holds firearm use or possession to highest standard of care, even slight deviation from which may constitute actionable negligence), *rev. denied; Jacobs*, 407 S.E.2d at 64 (classifying firearms as an "inherently dangerous instrumentality" which imposes on users a duty to employ "exceptional precautions to prevent injury"; distinguishing firearms from other products that are capable of being used to inflict harm, such as knives and golf clubs, because of the unusual dangers presented by firearms); *Long v. Turk*, 265 Kan. 855, 962 P.2d 1093, 1096 (1998) (court had "no difficulty concluding that a .357 Magnum handgun is a dangerous instrumentality" which requires the highest degree of care in safeguarding); *Strever v. Cline*, 278 Mont. 165, 924 P.2d 666, 671 (1996) (stating firearm is dangerous instrumentality that requires a higher degree of care in use and handling). We are not today, however, requested to create a higher standard of care, nor do I see any need to do so.

regard to placement of the poles. It is just as foreseeable that a person lawfully present in a home will through curiosity or by design take an unsecured firearm and through negligence or design injure another person. See *Irons*, 46 Conn.Supp. 1, 734 A.2d 1052 (in holding that defendants owed duty of care with respect to guns maintained on premises they controlled to prevent murder by adult son who resided on premises, court stated that "in determining whether harm is foreseeable, the standard is whether harm of the general nature that occurred" was reasonably foreseeable); *Pavlides v. Niles Gun Show, Inc.*, 93 Ohio App.3d 46, 637 N.E.2d 404 (1994) (in finding duty to safeguard guns at gun shows from minors who might steal them, court stated test of foreseeability does not require that defendant foresee the exact consequences of his actions; sufficient that reasonably prudent person would have anticipated that an injury would result from his conduct); Andrew J. McClurg, *Armed and Dangerous: Tort Liability for the Negligent Storage of Firearms*, 32 CONN. L.REV. 1189, 1207, 1208 (Summer 2000). Thus, the foreseeability prong cuts in favor of finding a duty to safely store guns.

In making the factual recitations set forth above, I do not utilize such circumstances in the sense that they evaluate the facts of the actual occurrence as is done in the foreseeability analysis of proximate cause. My considerations are not a "recitation of the particular circumstances of an incident after the incident occurs." *Goldsberry*, 672 N.E.2d at 479. Rather, the facts are set forth in the context of the second factor enumerated under the *Webb* formula for determining the existence of duty, i.e. "the reasonable foreseeability of harm to the person injured." 575 N.E.2d at 995. I do not approach from a "perspective that is 'after the event and looking back from the harm to the actor's negligent conduct.'" *Goldsberry*, 672 N.E.2d at 479. Rather, I assess the facts as they existed *before* Timothy gained possession of the gun from the house and shot Deputy Heck. In this manner I reach the conclusion that defendant's knowledge of the facts and the further knowledge of the foreseeability of harm to police officers such as Deputy Heck, created a duty on the part of defendants to exercise reasonable care *under those circumstances*. Whether there was a breach of that duty and if so, whether the breach was a proximate cause of Deputy Heck's death is, as enunciated in *Goldsberry*, a different issue appropriate for resolution by a jury.[17]

I would reverse the dismissal of the Estate's amended complaint and the granting of defendants' motions for summary judgment and would remand for further proceedings.

---

17. I do not perceive the public policy set forth in Article I, Section 32 of the Indiana Constitution, the right to bear arms, to militate against the existence of the duty I find present in this case. The right is not absolute. *Dozier v. State*, 709 N.E.2d 27 (Ind.Ct.App.1999). In the interests of public safety and welfare, the possession and use of handguns may be regulated by the State. *Matthews v. State*, 237 Ind. 677, 148 N.E.2d 334 (1958). Similarly, I would find no prohibition against a common law rule of negligence with regard to the care and storage of dangerous weapons.