ESTATE OF Eryk T. HECK, By Personal Representative Donald Heck, Appellant (Plaintiff Below),

v.

Raymond E. STOFFER, Patricia Stoffer and Ray Stoffer & Son Construction, Inc., Appellee (Defendant Below).

No. 02S03–0202–CV–125.

Supreme Court of Indiana.

April 7, 2003.

John C. Theisen, Mark C. Garvin, Holly A. Brady, Barnes & Thornburg, Fort Wayne, IN, Attorneys for Appellant.

Thomas W. Belleperche, Brian England, Hunt Suedhoff Kalamaros LLP, David K. Hawk, Jeffery P. Smith, Hawk, Haynie, Kammeyer & Chickedantz, Stephen J. Harants, Miller, Carson, Boxberger & Murphy, LLP, Fort Wayne, IN, Attorneys for Appellee.

Philip W. Horton, Stephen K. Marsh, Mara V.J. Senn, Gillian C. Wood, Arnold & Porter, Dennis A. Henigan, Daniel Vice, Brady Center to Prevent Gun Violence, Legal Action Project, Washington, DC, Lukas I. Cohen, Meyer & Wyatt, P.C., Gary, IN, David E. Vandercoy, National Rifle Association, Valporaiso, Attorneys for Amicus Curiae.

SHEPARD, Chief Justice.

With a handgun taken from his parents' home, fugitive felon Timothy Stoffer shot and killed Allen County Police Officer Eryk Heck. Officer Heck's Estate brought suit against Timothy's parents, Raymond and Patricia, and their family business, Stoffer Construction, asserting liability for negligent storage of the firearm in a way that afforded Timothy access to it.

The trial court and Court of Appeals both held that the plaintiff's complaint did not state a cause of action upon which relief could be granted, and that the Stoffers were entitled to summary judgment. We reverse.

### Facts & Procedural History

Timothy Stoffer's short life overflowed with delinquent and criminal acts, starting in the tenth grade when he dropped out of high school. During his early adulthood, Timothy bounced between probation and incarceration and court-ordered counseling for his drug addiction. Over a nine-year period, he was charged with and/or convicted of three instances of resisting law

enforcement, two instances of battery, burglary, theft, drug possession, multiple counts of forgery and check deception, escape, non-support and contempt. On August 15, 1997, he shot and killed Allen County Officer Heck to avoid apprehension. Timothy also died in the shoot out.

Timothy had also victimized his own family. Timothy's parents owned Stoffer Construction and employed him in the business. Timothy stole and forged checks from the business. He also stole his grandfather's ATM card, spending about $8,000 without permission before he was discovered. Timothy's final act was the taking of the handgun, which he later used to kill Officer Heck.

In the months leading up to the killing, the Stoffers helped Timothy avoid arrest. The Stoffers allowed Timothy to "hide out" at their lake cottage to avoid arrest. (R. at 713.) And during Timothy's stay at the cottage in February 1997, his father notified Timothy of a tracking device the police had placed on Timothy's vehicle. (R. at 540–41.) Since his release from prison in 1995, Timothy retained the keys to his parents' home. (R. at 594–96.)

Following the shooting, the personal representative of Officer Heck's Estate brought suit, alleging negligence in the storing and monitoring of the Stoffers' firearm. The Stoffers and their business ("the Stoffers") moved to dismiss the claim, or, in the alternative, for summary judgment. After several motions and hearings, the trial court granted the Stoffers' motion to dismiss the Estate's amended complaint with prejudice, and, in the alternative, it entered summary judgment.

The Court of Appeals affirmed, finding that the Stoffers had no duty to safely store their handgun.[1] *Estate of Heck v. Stoffer*, 752 N.E.2d 192, 199 (Ind.Ct.App. 2001), *trans. granted.* Judge Patrick Sullivan dissented, believing the Stoffers had a duty to exercise "reasonable care under the circumstances." *Id.* at 206 (Sullivan, J., dissenting.) He further wrote:

> [The Stoffers'] knowledge of the facts and the further knowledge of the foreseeability of harm to police officers such as Deputy Heck, created a duty on the part of [the Stoffers] to exercise reasonable care *under those circumstances.* Whether there was a breach of that duty and if so, whether the breach was a proximate cause of Deputy Heck's death is ... a different issue appropriate for resolution by a jury.

*Id.* at 208 (emphasis in original)(footnote omitted). We granted transfer and now reverse.

### Standard of Review

Indiana Trial Rule 12(B)(8) states that "If, on a motion, asserting [a 12(B)(6) mo-

---

1. The parties have argued at length about the Estate's unsuccessful request that the trial court strike certain Stoffer affidavits on grounds that they were technically deficient and so demonstrably false and misleading that their submission constituted bad faith under Ind. Trial Rule 56(G). The Court of Appeals reviewed these materials and said, "[W]e agree that they are problematic." *Estate of Heck*, 752 N.E.2d at 205. Ray Stoffer, for instance, testified during a friend's criminal trial that "he had not seen the weapons ... since probably two years before [Officer Heck's death]." (R. at 584.) He swore in this proceeding, however, that he "periodical-

ly checked the armchair for [his] gun and that he last noticed its presence on August 10, 1997." (R. at 70.) His counsel explained these two declarations by stating that the gun was kept down the side of an upholstered chair, such that Stoffer might repeatedly check for its presence by feeling for it without ever "seeing" it. Appellee Stoffers' Br. at 24. This is not an impressive reply. Nevertheless, we think these debates over striking the Stoffer affidavits do not go to the heart of the legal issues at stake and elect to summarily affirm the Court of Appeals on the issue of whether the affidavits should have been struck. Ind. Appellate Rule 58(A).

tion] to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." The trial court explicitly considered matters outside the face of the complaint, so we apply a summary judgment analysis.

Under this familiar standard of review, summary judgment is proper if the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Ind. Dep't of Env't Mgmt. v. Med. Disposal Servs., Inc.*, 729 N.E.2d 577 (Ind.2000). On appeal, we construe all facts and reasonable inferences drawn from those facts in a light most favorable to the nonmoving party. *Butler v. Peru*, 733 N.E.2d 912, (Ind.2000). We carefully review the trial court's decision to ensure that the responding party was not improperly denied his day in court. *Id.* With these ground rules in mind, our analysis follows.

## I. A Gun Owner's Duty of Care

Heck's Estate argues that the owner or possessor of a loaded handgun owes a duty to the public to exercise ordinary care in the storage and safekeeping of the handgun. The trial court ruled that absent negligent entrustment, when an instrumentality passes from a person's control, responsibility for injuries inflicted by it cease. The Court of Appeals agreed, basing its finding primarily on Article I, § 32 of the Indiana Constitution establishing a right to bear arms and the absence of a relevant statutory duty regarding storage of guns in the home. *Estate of Heck*, 752 N.E.2d at 200–01.

To recover on a theory of negligence, a plaintiff must establish three elements: (1) defendant's duty to conform his conduct to a standard of care arising from his relationship with the plaintiff, (2) a failure of the defendant to conform his conduct to that standard of care, and (3) an injury to the plaintiff proximately caused by the breach. *Miller v. Griesel*, 261 Ind. 604, 611, 308 N.E.2d 701, 706 (1974).

Whether the defendant must conform his conduct to a certain standard for the plaintiff's benefit is a question of law for the court to decide. *See Neal v. Home Builders, Inc.*, 232 Ind. 160, 111 N.E.2d 280 (1953). Courts will generally find a duty where reasonable persons would recognize and agree that it exists. *Gariup Const. Co. v. Foster*, 519 N.E.2d 1224, 1227 (Ind.1988). This analysis involves a balancing of three factors: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Webb v. Jarvis*, 575 N.E.2d 992, 996 (Ind.1991). We analyze these factors to determine if the Stoffers had a duty to store their firearm safely.

*A. Relationship Between the Parties.* The relationship between Officer Heck and the Stoffers was tenuous at best. Prior to the deaths of Officer Heck and Timothy, the parties did not know each other. (*See* R. at 572–73.) Their relationship was formed only because of Timothy's acts. The Stoffers were gun owners and parents of a drug-addicted felon fleeing from police, to whom they gave unrestricted access to their home where they kept a handgun. Officer Heck was the policeman attempting to apprehend Timothy. This factor weighs in the Stoffers' favor.

*B. Reasonable Foreseeability of Harm.* On the other hand, given the facts of this case, the foreseeability of the harm weighs in the Estate's favor. By his own admis-

sion, Ray Stoffer indicated his awareness of Timothy's frame of mind. He told police:

> [Timothy] had all this pressure, there was nothing left, there was no other way to go. For him to take a gun, he had [to] know.... [H]e knew the situation with the police, he knew they wanted him and for him to have a gun on him, he knew what was going to happen, I know he did. I told [my wife], he had to almost have a death wish ...

(R. at 754.)

Several additional facts, taken as a whole, lead us to conclude that the events of this case were foreseeable. Timothy had stolen from his family several times. On three separate occasions, he was charged with resisting law enforcement officers. He actively sought to evade police detection by hiding at his parents' lake cottage. Ray Stoffer believed Timothy would flee rather than face his August 14th sentencing hearing. (R. at 837.) The Stoffers' knew of Timothy's lengthy criminal history. Finally and most important, Timothy retained free and unfettered access to his parents' home.

Other actions by the Stoffers' lend further credence to the foreseeability of these tragic events. When their grandchildren visited, the Stoffers hid the handgun in the attic. (R. at 387, 395.) Moreover, upon Timothy's release from prison, they took "extra precautions" to secure their cash, checks and other valuables based upon Timothy's track record of stealing from family members. (R. at 605.) The Stoffers exercised due care to protect their grandchildren and valuables, but failed to safeguard the gun from "a mentally disturbed, habitual and violent offender [with]

free access to the premises." *Estate of Heck*, 752 N.E.2d at 207 (Sullivan, J., dissenting).

We decline to take a narrow view of *Webb's* foreseeability of harm prong and determine that this factor weighs in favor of the establishment of a duty.

*C. Public Policy Concerns.* As to the public policy concerns implicated in this case, our review of current scholarship reveals that Timothy's theft and usage of the gun to kill Officer Heck is depressingly common. Over a quarter million firearms are stolen each year, and this arsenal is used in thirty-five percent of the crimes involving guns. Andrew J. McClurg, *Armed and Dangerous: Tort Liability for the Negligent Storage of Firearms,* 32 Conn. L.Rev. 1189, 1227 (2000).

In Indiana alone, over 4,000 people were killed and an additional 8,800 were injured by gun violence over the most recent five years for which data was available. (Amicus Brady Ctr. to Prevent Gun Violence et al. Br. at 3.) Preserving human life and reducing criminal acts are the most important public policy goals.[2]

These statistics take on greater significance when juxtaposed with the relatively slight burden of reducing the risk of gun theft. Safe firearm storage, depending on the particular circumstances, can be accomplished by numerous non-burdensome means. Simply locking the front door, thereby preventing the public's access, may be sufficient in some circumstances. Where the risk of theft is greater, more safety measures might be required—such as placing the gun in a safe, locking the trigger, storing the gun and ammunition separately, taking back house keys, or

---

2. These numbers bolster our earlier conclusion regarding the foreseeability of this harm. Given the facts of this case, a reasonably foreseeable consequence of storing a firearm in an accessible location is that the gun might be stolen and used in furtherance of criminal activity.

changing locks. Different factual situations call for different methods of safeguarding, but most are relatively non-burdensome to gun owners.

Basing its decision on what it called the Indiana Constitution's "longstanding and largely unfettered right to bear arms," the Court of Appeals found that public policy did not support a duty to store and keep guns safely. *Estate of Heck*, 752 N.E.2d at 201.[3] Of course, the Court of Appeals was focusing on the dearth of legislation about storage of firearms. There is a good deal of legislation on the topic of firearm safety—legislation that rests on the constitutional notion that the right to bear arms is not absolute. *See Kellogg v. City of Gary*, 562 N.E.2d 685, 694 (Ind. 1990).

The legislature's actions persuade us that public policy supports recognition of a duty in this case. A significant number of statutes govern the sale, use and possession of firearms. *See, e.g.*, Ind.Code Ann. § 35–47–2.5 (West 2000) (regulating the sale and license of handguns).

Indiana Code § 35–47–2–7 is a particularly relevant statute. It prohibits the sale or transfer of ownership of a handgun to a minor, felon, drug abuser, alcohol abuser or mentally incompetent person. *See id.* The legislature has deemed the safety risk associated with the possession of handguns by these individuals as too high. Implicit in this prohibition is the recognition that a degree of responsibility is associated with handgun ownership.

The Stoffers argue that recognition of a duty of reasonable and ordinary care in this case will create a "new and never-before recognized cause of action." (Appellee Stoffer Construction Br. at 12.) Not so. The cause of action is negligence,

and the duty of care is well established—that care which is reasonable under the circumstances. The Restatement (Second) of Torts § 298 explains:

> The care required is always reasonable care. This standard never varies, but the care which it is reasonable to require of the actor varies with the danger involved in his act, and is proportionate to it. The greater the danger, the greater the care which must be exercised.

Based upon the significant number of gun-related crimes and the ease of securing a firearm in the home, we find that public policy favors the safe storage of firearms.

■ *D. Conclusion About Duty.* Our review of this case's facts reveals that the balance of factors supports our conclusion that the Stoffers had a duty to exercise reasonable and ordinary care in the storage and safekeeping of their handgun.

*E. Role of Right to Bear Arms.* Professor Vandercoy has supplied us with a thoughtful brief analyzing the propriety of the question of common law duty we have discussed above. He also asserts that a legal regime permitting the sort of civil liability sought by Heck "would dampen, if not stifle, the right of Indiana citizens to keep a firearm in their dwellings for self-defense purposes." Amicus N.R.A. Br. at 11.

■ A constitutional guarantee does not shield parties from negligence claims tangentially related to the exercise thereof. Several constitutional provisions guarantee the free exercise of religion, but nothing precludes a person from suing for slip-and-fall injuries that occur on a church's premises. *See, e.g.*, *Hanson v. St. Luke's United Methodist Church*, 682 N.E.2d 1314

---

**3.** Article I, § 32 of our Constitution reads: "Right to bear arms. The people shall have a right to bear arms, for the defense of themselves and the State."

(Ind.Ct.App.1997), *aff'd in part and vacated in part*, 704 N.E.2d 1020 (Ind.1998). In the same vein, the press has the right to free exchange of thought and opinion, but newspaper distributors are not shielded from negligence suits for injuries caused by their delivery drivers. Similarly, Indiana gun owners are guaranteed the right to bear arms, but this right does not entitle owners to impose on their fellow citizens all the external human and economic costs associated with their ownership. Article I, § 32 does not preclude this action from going forward.

The trial court's dismissal of the Estate's complaint was therefore error.

## II. Summary Judgment Based on Intervening Act

As an alternative to its dismissal of the amended complaint, the trial court granted the Stoffers' motion for summary judgment. Although hesitant to conclude that the Stoffers' were not negligent, the court concluded that Timothy's killing of Officer Heck was an intervening act that eliminated the casual connection between the Stoffers' negligence and the death of Officer Heck.

In *Hooks SuperX, Inc. v. McLaughlin*, 642 N.E.2d 514 (Ind.1994), we discussed intervening acts. We held that "if harm is a natural, probable, and foreseeable consequence of the first negligent act or omission, the original wrongdoer may be held liable even though other independent agencies intervene between his negligence and the ultimate result." *Id.* at 520. Reasonably foreseeable intervening acts therefore do not break the chain of causation and the "original wrongful act will be treated as a proximate cause." *Id.*

In this case, a gun owner's duty to safely store and keep his/her firearm protects against the very result the trial court ruled was an intervening act—that a third party would obtain the firearm and use it in the commission of a crime. Denying recovery because the very act protected against occurred would make the duty a nullity.

Guns are dangerous instrumentalities that in the wrong hands have the potential to cause serious injuries. It is a responsible gun owner's duty to exercise reasonable care in the safe storage of a firearm. Amicus National Rifle Association's literature bears this point out. The NRA's "Safety & Training" website says:

> When Using or Storing a Gun, Always Follow These NRA Rules.... Store guns so they are not accessible to unauthorized persons. Many factors must be considered when deciding where and how to store guns. A person's particular situation will be a major part of the consideration. Dozens of gun storage devices, as well as locking devices that attach directly to the gun, are available.

National Rifle Association, *Safety & Training, available at* http://www.nra.org/ (last visited Feb. 14, 2003).

Accepting the acts set forth in the affidavits submitted, we conclude that summary judgment is improper. It is alleged that the Stoffers' stored their handgun between the cushions of a chair in their bedroom. It remains to be seen whether this constituted reasonable and ordinary care in this situation. The Stoffers argue that they did not show Timothy where the gun was hidden, but this is not dispositive. The question is whether leaving a loaded handgun in a hidden but accessible location was reasonable under these facts. This determination is a question for the jury. See *Beckett v. Clinton Prairie Sch. Corp.*, 504 N.E.2d 552, 554 (Ind.1987) (whether defendant exercised reasonable care is a factual determination for the jury).

## Conclusion

We reverse the dismissal of this action and direct that it be reinstated.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., CONCUR.