WITHDRAWN 10-12-11

REISSUED 10-12-11

IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-11-00089-CV

 

Ben L. Richardson, Sr. and 

Melba Richardson, Individually

and as Surviving Heirs of John 

Kennedy Richardson and as next

friends of Minor Children, 

Sarah Richardson, John Richardson,

and Joshua Richardson; Sunshine

Richardson, Individually and as Surviving,

                                                                                    Appellants

 v.

 

Michael Lee Crawford,

                                                                                    Appellee

 

 

 



From the 414th District
Court

McLennan County, Texas

Trial Court No. 2007-2176-5

 



MEMORANDUM  Opinion



 

Appellants, Ben
L. Richardson, Melba Richardson, Sarah Richardson, John Richardson, Joshua
Richardson, Sunshine Richardson, Katelyn Richardson, and the estate of John
Kennedy Richardson, complain about a summary judgment order in favor of
appellee, Michael Lee Crawford.  In three issues, appellants argue that the
trial court erred in:  (1) granting summary judgment in favor of appellee
because material fact issues existed as to their negligent entrustment and
negligent storage claims; and (2) overruling objections to third-party
testimony regarding “(a) the killer’s intent to steal the handgun, and (b) the
intent to kill [the deceased].”  We affirm.

I.                  
Background

 

This appeal
stems from the murder of John Kennedy Richardson on June 5, 2005, by his wife,
Gretchen Williams Richardson.  Gretchen admitted to shooting John on a Waco
highway during the early morning hours of June 5, 2005, with a .38 Smith &
Wesson snub-nose, five-shot revolver that was owned by appellee.

Gretchen and
appellee both worked as real estate agents at Stewart R. Kelly Real Estate,
Inc. d/b/a Kelly, Realtors (“Kelly Realtors”), a local company specializing in
real estate transactions.  By all accounts, Gretchen and appellee were
friends.  Gretchen, however, did not get along with many of her co-workers, and
in fact, many of her co-workers alleged that they were scared of how
manipulative, vindictive, hateful, and intimidating Gretchen could be.[1] 
Appellee testified that he did not see that side of Gretchen.  He and Gretchen
often had lunch together and shared “off-color” jokes via email.  Despite
rumors to the contrary, appellee denied that he had an affair with Gretchen,
though several of Gretchen’s colleagues provided statements to police
indicating that Gretchen boasted of having affairs with several men, including
several at the Kelly Realtors office.  Appellee claimed that Gretchen told him
that she was unhappy with her marriage, but she never indicated that she
intended to kill her husband.  Appellee recommended that Gretchen seek a
divorce.

Gretchen
testified that her downward spiral began in January 2005, when she became
depressed during recovery from a hysterectomy.  At that time, Gretchen began
abusing prescription pain pills and staying out during all hours of the night. 
Several of Gretchen’s colleagues observed her asleep at her desk when they
arrived at work early in the morning.  Gretchen acknowledged that she
continually worked to obtain more prescription pain pills through doctors and
other sources.

When Gretchen
arrived home just before midnight on June 4, 2005, John confronted Gretchen
about her drug abuse.  Gretchen had been drinking alcohol that night, and she
had taken some Ambien and five to eight Hydrocodone pills.  John told Gretchen
that he had informed the doctors who had prescribed the pills about her drug
abuse and requested that they no longer prescribe medications to Gretchen. 
Enraged, Gretchen verbally and physically fought with John until he let her
leave the house.  Gretchen was intent on showing John that he could not stop
her from procuring drugs whenever she wanted.

 After leaving
the house, Gretchen went to the Kelly Realtors office.  When she arrived at the
office, it was dark, as it was shortly after midnight on June 5th.  Gretchen
recalled that appellee left a loaded gun in his desk drawer, which was intended
to be used by women in the office who either came in early or stayed late and
were without a male escort.  Appellee testified that the Compass Bank building
next door had recently been robbed; he believed that the women in the office
could use the protection.  Gretchen stated that appellee told the women of the
office that they could also take the gun with them for protection when showing
properties to suspicious people or in bad parts of town.  Gretchen recalled
that she took the gun to show properties on four or five different occasions. 
Appellee, however, denied that the women had permission to take the gun off the
premises of the office.  Nevertheless, when Gretchen arrived at the office on June
5th, she went to appellee’s office, opened his desk drawer, moved to the side
the tray that was concealing the gun, and took the gun with her.  Gretchen
noted that she called John after she left the office, but he answered the phone
angry and asked several questions.[2]

Gretchen left
the office and went to an apartment complex in Robinson, Texas, to buy drugs. 
She alleged that it was her intent to use the gun taken from appellee’s desk
for protection during the drug deal, not for the showing of properties.  She
bought $400 worth of drugs, which, as Gretchen noted, may have included
methamphetamines. 

According to
Gretchen, as she was driving on Loop 340 towards her home in Lorena, Texas, she
realized that John was flashing the lights of his truck while driving behind
her.  They both pulled over to the side of the road and stopped their
vehicles.  Gretchen believed that John had followed her to witness the purchase
of the drugs, which “really put [her] in a state.”  John got out of his truck
and approached Gretchen.  Appellee’s gun sat in Gretchen’s lap, wrapped in a
T-shirt.  John yelled at Gretchen as he approached, and after she exited the
vehicle, she yelled “Just shut up!” while firing a warning shot into the air. 
John continued to argue with Gretchen and instructed her to stay away from the
couple’s children.  Gretchen then shot John several times, including once in
the leg and twice in the back.  Gretchen alleged that she only recalled
shooting John in the leg and that her next memory was of John’s head in her lap
when the police arrived.  She did remember, however, panicking about the drugs
and trying to plant them on John so that she would not be charged with drug
possession.  John died as a result of the gunshot wounds inflicted by Gretchen.

When first
questioned by police about the incident, Gretchen blamed an unknown
African-American male for the shooting and claimed that it was a drug deal that
had gone bad.  She later admitted to shooting John and subsequently pleaded
guilty to the murder of John, which resulted in a forty-year prison sentence
for her.

            On June 6, 2007, appellants
filed their original petition against appellee and defendants, Kelly Realtors,
Stewart Ragan Kelly, and Trammell Reid Kelly, asserting wrongful death and
survival claims based upon theories of negligent entrustment and “negligent
storage of a dangerous instrumentality.”[3] 
Appellee filed a general denial, denying all of the allegations contained in
appellants’ original petition, and a motion to designate Gretchen as a responsible
third party—a motion which the trial court granted.  

Appellee later
filed a traditional motion for summary judgment, arguing that issues of
material fact did not exist as to appellants’ causes of action.  Appellants
filed a response to appellee’s summary judgment motion, which included, among
other things, the full deposition testimony of appellee; Gretchen; Stewart;
Trammell; and Tracy A. O’Connor, a Lieutenant with the Robinson Police
Department who investigated this incident; various written statements given by
Gretchen’s colleagues at Kelly Realtors; and documents pertaining to handgun
safety and the procurement of a concealed handgun license.

Appellee filed
objections to appellants’ summary judgment evidence, all of which were denied
by the trial court except for:  

the purported testimony of Gretchen
Richardson, to the extent that it is utilized in a manner contrary to her
guilty plea to first[-]degree murder, which includes both the intent to commit
homicide, as well as a denial of any lack of capacity, with respect to pages
68-69 of the Gretchen Richardson deposition, Exhibit 1.[[4]]

 

The trial court subsequently granted
appellee’s motion for summary judgment and ordered that appellants take nothing
from appellee.  This appeal followed.

II.               
Negligent Entrustment & Negligent Storage of a Firearm

 

In their first issue, appellants argue
that Texas courts recognize the tort claim of negligent entrustment of a
firearm and that the trial court erred in concluding that no material fact
issue existed as to the elements of appellants’ negligent entrustment claim. 
In their second issue, appellants contend that, even if Gretchen’s use of
appellee’s gun was unauthorized, Texas courts should recognize a claim for
negligent storage of a firearm and that material fact issues exist as to that
claim.

A.   
Standard of
Review

 

We review the
grant or denial of a traditional summary judgment de novo.  See Creditwatch,
Inc. v. Jackson, 157 S.W.3d 814, 816 n.7 (Tex. 2005); Provident Life
& Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215-16 (Tex. 2003).  A
movant is entitled to summary judgment if he demonstrates that no genuine
issues of material fact exist and that he is entitled to judgment as a matter
of law.  See Tex. R. Civ. P.
166a(c); see also Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex.
2002).  The movant bears the burden of proof in a traditional motion for
summary judgment, and all doubts about the existence of a genuine issue of
material fact are resolved against the movant.  See Sw. Elec. Power Co.,
73 S.W.3d at 215.  We take as true all evidence favorable to the non-movant,
and we indulge every reasonable inference and resolve any doubts in the
non-movant’s favor.  See Valence Operating Co. v. Dorsett, 164 S.W.3d
656, 661 (Tex. 2005).

We will affirm a
traditional summary judgment only if the record establishes that the movant has
conclusively proved its defense as matter of law or if the movant has negated
at least one essential element of the plaintiff’s cause of action.  IHS
Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798
(Tex. 2004); see Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex.
1997).  A matter is conclusively established if reasonable people could not
differ as to the conclusion to be drawn from the evidence.  City of Keller
v. Wilson, 168 S.W.3d 802, 816 (Tex. 2005); see Goodyear Tire
& Rubber Co. v. Mayes, 236 S.W.3d 754, 755 (Tex. 2007).  Only when the
movant has produced sufficient evidence to establish its right to summary
judgment does the burden shift to the non-movant to come forward with competent
controverting evidence raising a genuine issue of material fact with regard to
the element challenged by the defendant.  Rhone-Poulenc, Inc. v. Steel,
997 S.W.2d 217, 223 (Tex. 1999).

B.    
Applicable
Law

 

At the outset of our analysis of
appellants’ contentions, we note that this Court has not recognized a cause of
action for negligent entrustment of a firearm.  A few other Texas courts,
however, have recognized a cause of action for negligent entrustment of a
firearm.  See Prather v. Brandt, 981 S.W.2d 801, 806 (Tex. App.—Houston
[1st Dist.] 1998, pet. denied); Kennedy v. Baird, 682 S.W.2d 377, 378-79
(Tex. App.—El Paso 1984, no writ).  In recognizing this cause of the action,
the courts have analogized negligent entrustment of a firearm to negligent
entrustment of an automobile.  See Prather, 981 S.W.2d at 806; see
also Kennedy, 682 S.W.2d at 378-79.

The Second Restatement of Torts provides
that a person who gives a chattel to another, knowing the other person, due to
youth, inexperience, or other factors, is likely to use the chattel in a manner
involving unreasonable risk of harm to himself or others, may be held liable
for harm caused by the use of the chattel.  Restatement
(Second) of Torts § 390 (1965); see Prather, 981 S.W.2d at 806
(citing Rodriguez v. Spencer, 902 S.W.2d 37, 42 (Tex. App.—Houston [1st
Dist.] 1995, no writ)).

To establish negligent entrustment of an
automobile, a plaintiff must prove the following elements:  (1) the owner
entrusted the automobile (2) to a person who was an incompetent or reckless
driver (3) who the owner knew or should have known was incompetent or reckless;
(4) the driver was negligent; and (5) the driver’s negligence proximately
caused the accident and the plaintiff’s injuries.  Prather, 981 S.W.2d
at 806; see Mayes, 236 S.W.3d at 758.

C.   
Negligent
Entrustment

 

Though we have
not specifically recognized a cause of action for negligent entrustment of a
firearm, even if we were to apply the negligent entrustment factors articulated
in Prather and Mayes, we cannot say that appellants’ summary
judgment evidence raises a genuine issue of material fact so as to preclude
summary judgment.[5] 
See Prather, 981 S.W.2d at 806; see also Mayes, 236 S.W.3d at
758.

In his motion
for summary judgment, appellee asserted that:  (1) he had no legal duty to
prevent unforeseeable criminal acts; (2) the evidence did not establish that he
could have foreseen Gretchen’s intentional act of murdering John; (3)
appellants’ negligent entrustment claim must fail because there is no evidence
that he knew that Gretchen was incompetent or reckless in handling guns and
because Gretchen engaged in an intentional act using the gun; and (4)
Gretchen’s criminal act is a superseding cause breaking the causation chain.

In her
deposition testimony, Gretchen admitted that it was not foreseeable to anyone
at Kelly Realtors that she would kill John.  She did testify that she was
depressed and abusing drugs, but she hid that from her colleagues at the
office, though she described herself as a “walking time bomb.”  She also
admitted that John kept several guns around the house and that a couple of them
were left unsecured underneath their bed or in a closet.  When asked whether
she knew how to use a gun “enough to where you could shoot and kill your
husband,” Gretchen responded in the affirmative.  She also recalled going to a
gun range and learning how to shoot a gun when she was seventeen years old and
that she had shot a rifle with her mother-in-law.  Despite her experience with
handling firearms, Gretchen did not believe that she was “fit or qualified to
use a handgun for off-site self-defense protection.”

Gretchen noted
that she only told appellee that she had some family problems, but she did not
“use him as a sounding board.”  She did not recall telling appellee about any
violence or threats of violence in her home or about her drug use.  She did,
however, tell appellee about affairs that she was having.  Gretchen recalled
that she often joked with other colleagues at Kelly Realtors about killing John
by poisoning his food[6];
however, there is no testimony establishing that she informed appellee of her
intent to kill John.  When Gretchen’s trial counsel asked Gretchen whether she
would have murdered John had appellee not provided the gun, she responded:

We would have argued, and I would have
driven off to my brother’s house and probably stayed gone for a while, like I
did other times. . . .  If I hadn’t had it with me, there would have been no
way to kill him, and it was just an instant reaction, just anger and—you know.

 

Gretchen characterized the scope of appellee’s
permission to use the gun as follows:

He had said if we were meeting a client
that we were leery of, we could take it with us, or if—his preference was that
clients would meet us at the office so that other people could see them and,
you know, they would know that someone was aware that that’s who we were going
to be with, but if that wasn’t the case and another male agent was not
available, that we could use the gun.

 

Nevertheless, she took the gun for
protection while she purchased drugs from a dealer at an apartment complex in
Robinson.  Lieutenant O’Connor described Gretchen’s taking of the gun for that
purpose as a theft.

            Appellee stated that he had
no knowledge of the shooting or that Gretchen intended to shoot John.  At the
time of the incident, appellee was on a cruise to Mexico with his wife. 
Appellee denied giving anyone permission to use the gun in the commission of a
criminal act or to take the gun out of the office, though Gretchen was
permitted to use the gun “[i]f she had an issue in the office.”  Appellee was
unaware that Gretchen was abusing drugs or that she was depressed.    

            As a general rule, “a person
has no legal duty to protect another from the criminal acts of a third
person.”  Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996).  But, in Phan
Son Van v. Pena, the Texas Supreme Court noted that:

The act of a third person in committing
an intentional tort or crime is a superseding cause of harm to another
resulting therefrom, although the actor’s negligent conduct created a situation
which afforded an opportunity to the third person to commit such a tort or
crime, unless the actor at the time of his negligent conduct realized or
should have realized the likelihood that such a situation might be created, and
that a third person might avail himself of the opportunity to commit such a
tort or crime.  

 

990 S.W.2d 751, 753 (Tex. 1999)
(emphasis in original); see Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d
546, 550 (Tex. 1985) (holding that third-party criminal conduct is a
superseding cause unless the criminal conduct is a foreseeable result of such
negligence).

To impose liability on a defendant for
negligence in failing to prevent the criminal conduct of another, the facts
must show more than conduct that creates an opportunity to commit crime—they
must show both that the defendant committed negligent acts and that it knew or
should have known that, because of its acts, the crime (or one like it) might
occur.  

 

Barton v. Whataburger, Inc., 276 S.W.3d 456, 462 (Tex. App.—Houston
[1st Dist.] 2008, pet. denied); see Restatement
(Second) of Torts § 448 (1965); see also R.K. v. Ramirez, 887
S.W.2d 836, 846 (Tex. 1994) (Enoch, J., dissenting) (noting that the essence of
negligent entrustment is an awareness by the entrustor of the propensity of the
actor to commit the act upon which the negligence claim is based).  

“Foreseeability
. . . requires that a person of ordinary intelligence should have anticipated
the danger created by a negligent act or omission.”  Doe v. Boys Club of
Greater Dallas, Inc., 907 S.W.2d 472, 478 (Tex. 1995).  A danger is
foreseeable if its general character might reasonably be anticipated, if not
its precise manner.  Travis v. City of Mesquite, 830 S.W.2d 94, 98 (Tex.
1992).  This determination involves a practical inquiry, based on common
experience applied to human conduct, and asks whether the injury might
reasonably have been contemplated as a result of the defendant’s conduct.  Doe,
907 S.W.2d at 478.  Importantly, “[f]oreseeability requires more than someone,
viewing the facts in retrospect, theorizing an extraordinary sequence of events
whereby the defendant’s conduct brings about the injury.”  Id.

Here, Gretchen
admitted that no one at Kelly Realtors, including appellee, could have foreseen
that she intended to murder John.  In addition, Gretchen stated that she wore a
“mask” at work to conceal her depression, drug abuse, and the problems she was
allegedly having at home.  Assuming without deciding that appellee was
negligent in leaving the gun in his desk for others at the office to use,
appellants have not tendered evidence demonstrating that appellee knew or
should have known that Gretchen would use his gun to shoot John.  In fact,
Gretchen testified that she took the gun from appellee’s desk to use for
protection while she purchased drugs, which was also outside the scope of
permission provided by appellee.  Essentially, Gretchen used appellee’s gun in
the commission of two separate criminal acts.  Though appellee was aware that
Gretchen was not happy in her marriage to John, appellee had no knowledge that
Gretchen intended to kill John.  Rather, appellee suggested that Gretchen file
for divorce.  As such, we believe that Gretchen’s intentional act of shooting
John was unforeseeable and would constitute a superseding cause of harm which
breaks the chain of causation.  See Schneider v. Esperanza
Transmission Co., 744 S.W.2d 595, 596-97 (Tex. 1987) (finding, in a
negligent entrustment case, no proximate cause because the defendant’s
entrustment of a truck to a driver did not cause the accident, and the
defendant’s knowledge about the driver’s record of speeding tickets did not
lead it to foresee the accident resulting in injury)[7];
see also Pena, 990 S.W.2d at 753; Doe, 907 S.W.2d at 478; Nixon,
690 S.W.2d at 550; Barton, 276 S.W.3d at  462.  

Because the summary judgment record
conclusively negates the proximate causation element of appellants’ negligent
entrustment cause of action, we cannot say that the trial court erred in
granting summary judgment in appellee’s favor.  See Mason, 143 S.W.3d at
798; Grinnell, 951 S.W.2d at 425; see also Mayes, 236
S.W.3d at 758; Prather, 981 S.W.2d at 806.  And, as a secondary ground
supporting the trial court’s summary judgment order, we note that the summary
judgment record demonstrates that Gretchen has experience handling firearms,
though she does not have a license to carry a firearm; her house contained
several unsecured firearms; that she hid her alleged emotional instability from
her colleagues; and that appellee did not have any inkling that Gretchen was
mentally unstable or lacked experience handling firearms; thus, the record
conclusively negates the reckless or incompetent element of appellants’
negligent entrustment claim.  See Mayes, 236 S.W.3d at 758; Prather,
981 S.W.2d at 806; see also Williams v. Steves Indus., Inc., 699
S.W.2d 570, 571 (Tex. 1985) (“[W]hether a driver has a license does not
determine whether a driver is, in fact, incompetent.”) (emphasis in
original); Robson v. Gilbreath, 267 S.W.3d 401, 406 (Tex. App.—Austin
2008, pet. denied) (stating that mere involvement in an accident does not
create an inference or conclusion that a driver is incompetent or reckless, and
evidence that a driver is inexperienced, without more, does not permit an
inference that a driver lacked judgment or perception or was otherwise an
incompetent driver).  Based on the foregoing, we overrule appellants’ first
issue.




 

D.   
Negligent
Storage

 

With respect to
their second issue, appellants acknowledge that no Texas court has recognized
an independent cause of action for negligent storage of a firearm. 
Nevertheless, appellants direct us to cases from several other states where
such a claim purportedly exists.  See, e.g., Jupin v. Kask, 849 N.E.2d
829, 842 (Mass. 2006); Gallera v. Koskovich, 836 A.2d 840, 851 (N.J. 2003);
Heck v. Stoffer, 786 N.E.2d 265, 271 (Ind. 2003); see also Andrew
J. McClurg, Armed and Dangerous:  Tort Liability for the Negligent Storage
of Firearms, 32 Conn. L. Rev.
1189 (2000).  While the authority cited by appellants from other state courts
constitutes persuasive authority, none of it is binding on this Court.  See
Penrod Drilling Corp. v. Williams, 868 S.W.2d 294, 296 (Tex. 1993) (stating
that opinions from any federal or state court may be relied on a persuasive
authority, but Texas appellate courts are obligated to follow only higher Texas
courts and the United States Supreme Court).  Given that neither the Texas
Supreme Court nor our sister courts in Texas have recognized a claim for
negligent storage of a firearm, we decline to do so at this time.[8] 
Accordingly, we overrule appellants’ second issue.

III.            
Gretchen’s Third-Party Testimony

 

Though
appellants list, in their issues presented, a third issue pertaining to the
trial court’s overruling of their objections to Gretchen’s third-party
testimony regarding her intent to steal appellee’s gun and her intent to kill
John, appellants do not provide any argument or authority in support of this
issue.  As a result, we conclude that this issue has been inadequately briefed
and, therefore, waived.  See Tex.
R. App. P. 38.1(i) (providing that a “brief must contain a clear and
concise argument for the contentions made, with appropriate citations to
authorities and to the record”).  We overrule appellants’ third issue.

IV.            
Conclusion

 

Having overruled
all of appellants’ issues, we affirm the judgment of the trial court.

 

 

AL SCOGGINS

                                                                                    Justice

 

 

Before Chief
Justice Gray,

            Justice
Davis, and

            Justice
Scoggins

Affirmed

Opinion delivered
and filed August 17, 2011

[CV06]








 









[1] One of Gretchen’s colleagues recalled
an instance where Gretchen “forked” someone’s yard.  “Forking” apparently
involves the concealing of forks in the ground with the prongs up so that
anyone who walks across the yard will be injured by the spikes.  In addition,
several colleagues recalled that Gretchen yelled at John on the phone and often
stated that she hated him.  However, no evidence in the record indicates that
appellee was aware of these incidents.  





[2] Gretchen initially testified that she
pulled into a strip mall located on Franklin Avenue to call John from a pay
phone, though she had her cell phone in the car.  However, she could not recall
exactly where the telephone call was made, and she acknowledged that police
“[p]robably” discovered when the phone call was made by “tracing through cell
phone records.”





[3] In their first amended petition,
appellants dropped all of their claims against all defendants except appellee.

 





[4] On pages 68-69 of her deposition,
Gretchen testified that she “definitely didn’t” intentionally and knowingly
kill John.  This testimony contradicted her previously-entered guilty plea, and
as such, the trial court sustained appellee’s objection to this testimony.





[5] Though we analyze the merits of appellants’
first issue, this should not be interpreted to mean that we recognize
“negligent entrustment” to include personal property, in general, or of a
firearm, in particular, as a cause of action.





[6] Lieutenant O’Connor stated that, based
on his investigation, Gretchen’s murder of John was premeditated and that, when
she spoke to police at the scene of the incident, she was cold, callous, and
“[n]oncaring.”  Lieutenant O’Connor did not believe that Gretchen handled the
gun negligently or that the gun discharged accidentally.  Furthermore, the fact
that the gun was wrapped in a T-shirt led Lieutenant O’Connor to conclude that
Gretchen sought to conceal the gun.





[7] Specifically, in Schneider,
Esperanza Transmission Company, an oil-field pipeline company, provided a
pick-up truck to one of its employees for business and personal use.  744
S.W.2d 595, 595 (Tex. 1987).  The employee and a friend of his went to a dance
one night.  Id.  Upon leaving the dance hall, the employee stated that
he had drank too much and asked his friend to drive the pick-up truck.  Id. 
The friend subsequently collided with the rear of a vehicle driven by
Schneider.  Id.





[8] It is also noteworthy to mention that
one Texas court declined to hold a gun store liable with regard to a complaint
that is similar to the negligent-storage contention made here.  See Ambrosio
v. Carter’s Shooting Ctr., Inc., 20 S.W.3d 262, 269 (Tex. App.—Houston
[14th Dist.] 2000, pet. denied).  In Ambrosio, a Smith & Wesson
handgun was stolen from an unlocked display case at a gun store by a customer
when the store attendants were helping other customers.  Id. at 264. 
Subsequently, the stolen gun was sold to another, who used the gun in several
violent crimes, including the murder of a man during a carjacking.  Id. 
The family of the man killed during the carjacking filed suit against the gun
store for negligence, negligence per se, strict liability, and gross
negligence.  Id. at 263.  Specifically, appellants asserted that
“appellee violated its duty to exercise care in the storage and display of its
firearms” and that the violation of this duty caused the death of Alek
Ambrosio.  Id.  Appellants also argued that appellee’s lax security
previously resulted in thefts of other guns from the store.  Id. at
269.  The Ambrosio court held that summary judgment was proper because
“appellee’s failure to exercise care in the storage and display of its firearms
is too remote and attenuated from the criminal conduct of the . . . car[]jackers
to constitute a legal cause of injury to either Alek Ambrosio or his parents.” 
Id. at 266.