BROWN, Judge,
concurring.
[30] I concur with the reasoning and the result reached by the majority, but I *950 write separately to clarify my view of the issue. Initially, it is important to consider that to the extent Ind.Code § 34-12-3-3 operates in derogation of the common law, this court must strictly construe it. See JPMorgan Chase Bank, N.A. v. Claybridge Homeowners Ass’n, Inc., 39 N.E.3d 666, 671 (Ind.2015). When the legislature enacts a statute in derogation of common law, we presume that the legislature is aware of the common law and does not intend, to make any change beyond what is declared in express terms or by unmistakable implication. Preferred Prof'l Ins. Co. v. West, 23 N.E.3d 716, 727 (Ind.Ct.App. 2014). Also, in construing a statute, “[i]t is just as important to recognize what the statute does not say as it is to recognize what it does say.” Goodrich Quality Theaters, Inc. v. Fostcorp Heating and Cooling, Inc., 39 N.E.3d 660, 665 (Ind.2015) (quoting N.D.F. v. State, 775 N.E.2d 1085, 1088 (Ind.2002)).
[31] As the majority notes, Ind.Code § 34-12-3-3 provides two categories under which a person may not bring or maintain an action against a firearms seller. Subsection 1 precludes actions seeking to recover damages, injunctive relief, or the abatement of a nuisance regarding lawful activity related to designing, manufacturing, marketing, or selling firearms or ammunition. Subsection 2 bars actions seeking to recover damages which were the result of the criminal or unlawful misuse of a firearm or ammunition by a third party. Importantly, however, Section 3 does not bar bringing an action seeking damages relating to unlawful activity on the part of the firearms seller. The implication of the absence of such language is obvious: the legislature did not intend to bar actions against firearms sellers relating to their own unlawful activity.
[32] That the legislature did not intend to provide firearms sellers the extent of immunity argued by KS & E is demonstrated by comparing the legislature’s actions following two 2003 decisions of the Indiana Supreme Court. First, the Court handed down City of Gary ex rel. King v. Smith & Wesson Corp., 801 N.E.2d 1222 (Ind.2003). In that case, the City of Gary brought a comprehensive lawsuit “against a number of participants at various stages in the manufacture and distribution of handguns,” alleging “claims for public nuisance and negligence against manufacturers, wholesalers, and distributors of these products.” City of Gary, 801 N.E.2d at 1227. The City “sued for injunctive relief and money damages for the harm it alleges is caused by the unlawful marketing and distribution of handguns.” Id. Its complaint alleged claims of public nuisance, negligence in distribution of guns, and negligent design. Id. at 1228. The Court held that most of the allegations in the City’s complaint stated a claim and reversed the trial court’s dismissal of such claims. Id. at 1228-1229.
[33]That same year, the Court issued its decision in Estate of Heck v. Stoffer, 786 N.E.2d 265 (Ind.2003), reh’g denied. In Heck, the Court examined whether a plaintiff could bring a negligence action against a gun owner related to the storage of a firearm. Heck, 786 N.E.2d at 266. The facts underlying Heck involved Timothy Stoffer, who was the son of the defendants and was a fugitive felon, shooting and killing Allen County Police Officer Eryk Heck using his parents’ firearm, which he took without their permission. Id. at 266-267. Heck’s Estate brought the negligence action, and the Staffers moved to dismiss the claim and alternatively for summary judgment, and the trial court granted their motion both as a dismissal and an entry of summary judgment. Id. at 267. On transfer, the Court reversed the trial court on both grounds. Id. at 271-272. Specifically, the Court reasoned that “the Staf *951 fers had a duty to exercise reasonable and ordinary care in the storage and safekeeping of their handgun” and that accordingly the action should be reinstated. Id. at 270.
[34] In the legislature’s 2004 session, it passed Pub.L. No. 80-2004 which amended Ind. Code § 34-12-3-3, changing the text in the preamble of the statute from “[except as provided in section 5” to read “[e]xcept as provided in section 5(1) or 5(2)....”[5] Pub.L. No. 80-2004, § 3 (eff. March 17, 2004). That same session law also contained Section 5, which codified Ind.Code § 34-30-20-1, titled “Immunity for Misuse of a Firearm or Ammunition by a Person Other Than the Owner,” and which provided:
A person is immune from civil liability based on an act or omission related to the use of a firearm or ammunition for a firearm by another person if the other person directly or indirectly obtained the firearm or ammunition for a firearm through the commission of the following:
(1) Burglary (IC 35-43-2-1).
(2) Robbery (IC 35-42-5-1).
(3) Theft (IC 35-43-4-2).
(4) Receiving stolen property (IC 35-43-4-2).
(5) Criminal conversion (IC 35-43-4-3).
Pub. T. No. 80-2004, § 5 (eff. March 17, 2004) (emphasis added).
[35] The legislature demonstrated in Pub. T. No. 80-2004 that it knew how to write a statute expressly derogating the common law and granting immunity from civil liability, and it chose not to do so regarding the unlawful sale of firearms for firearms sellers in Ind.Code § 34-12-3-3. I am persuaded by an argument made by Runnels’s counsel at oral argument regarding how to interpret the legislature’s actions regarding Section 3 as follows: “What the legislature was trying to do was they were codifying existing Indiana comparative fault law and freezing the common law relating to gun companies to prevent this expansion to novel theories that would impose ,.. liability such as absolute liability.” Oral Arg. at 26:58-27:22, available at https://mycourts.in.gov/arguments/ defaultaspx? &id=1874&view=detailfe yr=&when=&page=1 &court=& sear ch=& direction=ÁSC fefuture=True& sort= fejudge=108&county=&admin= False&pageSize=20. If the legislature wished to abrogate over 100 years of Indiana common law regarding the potential to impose liability on gun sellers for their own unlawful actions, it would have expressly done so. See Binford v. Johnston, 82 Ind. 426, 427-428, 431 (Ind.1882) (holding that a firearm seller could be held civilly liable for negligently selling pistol cartridges loaded with powder and ball to two minors, in which one of the minors was shot and killed by a ball, because “we can not deny a recovery if we find'that the injury was the natural or probable result of appellant’s original wrong”); see also City of Gary, 801 N.E.2d at 1227 (holding that the City of Gary’s claims for public nuisance and negligence against manufacturers, wholesalers, and distributors of handguns were valid claims under Indiana law); Rubin v. Johnson, 550 N.E.2d 324, 326, 331-333 (Ind.Ct.App.1990) (denying the defendant gun seller’s motion for summary judgment on the plaintiffs wrongful death action, in which the plaintiff alleged that defendant Rubin knowingly transferred, a firearm to a person who Rubin knew or reasonably should have, known was of unsound mind, holding that Rubin’s *952 argument that the shooter’s act constituted an intervening criminal act which should relieve him of any liability is erroneous and that “because the criminal, irresponsible, and unpredictable use of handguns is the very risk sought to be avoided under I.C. 35-47-2-7. [which prohibits sales or transfers of firearms to certain individuals], the realization of this risk cannot stand as a bar to recovery”).
[36] The claims alleged by Runnels in his complaint allege damages resulting from KS & E’s own actions. Counts I-V each sound in negligence, in which Runnels alleges that KS & E’s sale to Blackburn was a proximate cause of Runnels’s injuries. Count -VI, alleging a claim of damages resulting from a conspiracy, also directly concerns the actions of KS & E in causing Runnels’s injuries. Count VII, public nuisance, is specifically concerned with the nuisance created by KS & E itself as a result of the store’s unlawful activities. Finally, Count VIII seeks to pierce the corporate veil and sue Edward Ellis individually for his role in committing unlawful acts. I believe that none of these counts are barred by Ind.Code § 34-12-3-3.
[37] I also believe it improper to consider the legislature’s amendment to Ind. Code § 34-12-3-3 to change its effective date, seemingly so as to apply that statute to the issues being litigated in City of Gary, as reason to conclude that the legislature intended Ind.Code § 34-12-3-3 to immunize gun sellers from liability stemming from the unlawful sale of firearms. As noted, the nature of that case is far different from the facts presented by Runnels. ■ Indeed, much of the Court’s analysis pertained to the City’s claim “that handgun manufacturers, distributors, and dealers conduct their business in a manner that unreasonably interferes with public rights in the City of Gary, and therefore have created a public nuisance,” in which it was seeking in part injunctive relief to abate or enjoin the nuisance. 801 N.E.2d at 1229, 1238. The Court noted that “a public nuisance may exist without an underlying independent tort,” that “[h]ere the complaint does allege negligence and resulting predicable injury,” but that “a nuisance claim may be predicated on a lawful activity conducted in such a manner that it imposes costs on others.” Id. at 1234. The Court observed that “[n]ui-sances may arise from a lawful activity” and pointed to Yeager & Sullivan, Inc. v. O’Neill, 163 Ind.App. 466, 324 N.E.2d 846 (1975), in which this court “held that ‘[w]hile the keeping of hogs, being a lawful enterprise, cannot be characterized as an absolute nuisance or a nuisance, per se, such an activity can become a nuisance per accidents by reason of the manner in which the hogs are kept, the locality or both.’” Id. at 1234 n. 9 (quoting Yeager, 163 Ind.App. at 474, 324 N.E.2d at 852). The Court specifically stated in examining a defense raised by the firearms manufacturers and distributors that “an activity can be lawful and still be conducted in an unreasonable manner so as to constitute a nuisance.” Id. at 1234. In addition, the negligence claim alleged that the defendants in that action had “acted negligently in the distribution, marketing, and sale of handguns.” Id. at 1241 (emphasis added). Such a claim encompasses a far wider range of activity than the specific negligence claim alleged by Runnels.
[38]Thus, it is unclear which, if any, of the City of Gary’s allegations would be impacted by the language of Ind.Code § 34-12-3-3, and it is not before this Court to decide the statute’s impact in that case. The action brought by Runnels contains specific allegations of a straw sale which caused his personal injuries. Indeed, the Court in City of Gary observed that “[i]n this procedural posture the City *953 cites no specific transaction in which its damages are traceable to use of a gun obtained in an unlawful sale.” Id. at 1244. I do not believe the fact that the legislature may have acted to apply Ind.Code § 34-12-3-3 to some yet-to-be-discerned aspect of the City of Gary litigation necessarily leads to the conclusion that the statute is intended to provide complete immunity to gun sellers for unlawful sales of firearms.
[39] For the reasons stated, I concur with the majority opinion.

. Ind.Code § 34-12-3-3 was originally added to the Indiana Code by Pub.L. No. 19-2001, § 1 (eff. April 18, 2001). As discussed below and in the dissent, the effective date of Section 3 was amended by Pub.L. No. 106-2015, § 4 to August 26, 1999.-