

**FILED**

Feb 14 2019, 8:34 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEYS FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Laurie E. Martin | Greg J. Freyberger |
| Kristofer S. Wilson | Wooden McLaughlin LLP |
| Hoover Hull Turner LLP | Evansville, Indiana |
| Indianapolis, Indiana | |
| | Elizabeth S. Schmitt |
| | Wooden McLaughlin LLP |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shelley Nicholson, as the Mother of Matthew Kendall, | February 14, 2019 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 18A-CT-1949 |
| v. | Appeal from the Dubois Circuit Court |
| Christopher S. Lee, | The Honorable Nathan A. Verkamp, Judge |
| *Appellee-Defendant* | Trial Court Cause No. 19C01-1805-CT-306 |

**Baker, Judge.**

[1] Christopher Lee left a handgun in plain sight in his unlocked, unattended truck, which was parked in a public area. A minor, C.O., saw the gun, took it, and showed it to his friend, Matthew Kendall, resulting in the discharge of the weapon and the death of Kendall. Kendall's mother, Shelley Nicholson, sued Lee for negligence. The trial court granted Lee's motion for judgment on the pleadings, finding as a matter of law that Indiana Code section 34-30-20-1 immunizes him from liability under these circumstances. Nicholson appeals, arguing that the trial court erred by granting the motion for judgment on the pleadings. Finding no error, we affirm.

## Facts[1]

[2] On July 22, 2016, Lee parked his truck outside in a public area. He left his loaded[2] Glock 9mm handgun on the seat of his truck, visible through the windows. After parking, Lee left his truck unlocked and unattended.

[3] C.O., a minor, was walking along the public way, saw Lee's truck, and saw the handgun inside the truck. C.O. took the handgun from the truck and returned to his home with it. He then showed the handgun to Kendall. In the process, the handgun discharged, shooting and killing Kendall.

---

[1] We held oral argument in Indianapolis on January 25, 2019. We thank the attorneys for their skilled written and oral presentations.

[2] Although the complaint does not explicitly state that the gun was loaded, there is no allegation that after taking the gun, C.O. later loaded it with bullets he found elsewhere. Therefore, for the purpose of this appeal, we infer that Lee's gun was loaded when he left it in the truck.

On May 17, 2018, Nicholson filed a complaint against Lee, alleging that Lee's storage of his handgun in open view inside an unlocked and unattended vehicle was negligent and a proximate cause of Kendall's death. In his answer, Lee admitted to owning the handgun and to storing it in an unlocked and unattended vehicle that was parked outside.

On July 11, 2018, Lee filed a motion for judgment on the pleadings, arguing that regardless of how he stores his handgun, if the handgun is stolen, he is statutorily immune from liability for any resulting harm, including Kendall's death. On July 20, 2018, the trial court granted the motion before Nicholson had a chance to respond to it. She filed a motion for reconsideration, asking the trial court to consider her timely filed brief opposing judgment on the pleadings. The trial court denied the motion. Nicholson now appeals.

## Discussion and Decision

Nicholson argues that the trial court erred by granting Lee's motion for judgment on the pleadings. A motion for judgment on the pleadings tests the sufficiency of a claim presented in the pleadings and should be granted only where it is clear from the face of the complaint that under no circumstances could relief be granted. *KS&E Sports v. Runnels*, 72 N.E.3d 892, 898 (Ind. 2017); *see also* Ind. Trial Rule 12(C). We apply a de novo standard of review to a trial court's ruling on a motion for judgment on the pleadings. *KS&E Sports*, 72 N.E.3d at 898.

We likewise apply a de novo standard of review to issues of statutory interpretation. *Id.* If a statute is clear and unambiguous, we put aside canons of statutory construction and take words and phrases in their plain, ordinary, and usual sense. *Id.* at 898-99. We will find a statute ambiguous and open to judicial construction only if it is subject to more than one reasonable interpretation. *Id.* at 899.

The statute at issue in this case is Indiana Code section 34-30-20-1, which provides as follows:

> A person is immune from civil liability based on an act or omission related to the use of a firearm or ammunition for a firearm by another person if the other person directly or indirectly obtained the firearm or ammunition for a firearm through the commission of the following:
>
> (1)     Burglary (IC 35-43-2-1).
>
> (2)     Robbery (IC 35-42-5-1).
>
> (3)     Theft (IC 35-43-4-2).
>
> (4)     Receiving stolen property (IC 35-43-4-2) (before its amendment on July 1, 2018).
>
> (5)     Criminal conversion (IC 35-43-4-3).

For the purposes of our review, we will accept the following alleged facts as true: Lee owned a handgun and left it, loaded, in plain view in a public area in his unlocked, unattended truck; C.O. took the handgun from Lee's vehicle without permission to do so, thereby committing one of the above listed offenses; C.O. showed the handgun to Kendall; and in the process, the handgun

discharged, shooting and killing Kendall. *See KS&E Sports*, 72 N.E.3d at 898 (explaining that when reviewing a motion for judgment on the pleadings, we must accept as true the material facts alleged in the complaint).

Nicholson argues that the trial court erred by finding that Indiana Code section 34-30-20-1 bars her claim as a matter of law. She explains that she is not claiming that Lee is liable based on C.O.'s actions; therefore, the statute— which immunizes gun owners from indirect liability for the acts of a third party—does not apply.

Specifically, Nicholson maintains that the basis of her complaint is Lee's *own negligence*. She directs our attention to the well-accepted duty that gun owners have "to exercise reasonable and ordinary care in the storage and safekeeping of their handgun." *Estate of Heck ex rel. Heck v. Stoffer*, 786 N.E.2d 265, 270 (Ind. 2003), *disapproved of on other grounds by Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 390-91 (Ind. 2016). According to Nicholson, Lee's storage of his handgun in an unlocked, unattended vehicle in a public area "failed to satisfy the most basic, non-burdensome step available for safe storage." Appellant's Br. p. 10. Nicholson insists that Lee's liability is directly based on his own acts and omissions, not indirectly based on the acts or omissions of a third party.[3] Consequently, the statute does not apply. To apply it here,

---

[3] She notes that whether C.O.'s actions constituted an intervening act that broke the chain of causation is a factual determination that is not before us in this appeal. All we need to decide here is whether a gun owner is shielded from liability as a matter of law if he carelessly stores a firearm.

Nicholson argues that we would have to interpret "liability based on an act or omission . . . by another" to mean "liability based on an act or omission . . . by the gun owner."[4] *Id.* at 11.

[11]     We find the timing of the General Assembly's enactment of Indiana Code section 34-30-20-1 to be instructive. The enactment of that statute was preceded by the *Estate of Heck* case. In that case, this Court first considered a fact pattern similar to the facts at issue here. 752 N.E.2d 192 (Ind. Ct. App. 2001), *trans. granted*, *vacated*. Timothy Stoffer was the adult son of Raymond and Patricia Stoffer. In the decades leading up to 1997, Timothy amassed multiple criminal convictions, stole money from his grandfather, and abused alcohol and illegal narcotics. In 1996 and 1997, Timothy lived at his parents' lake house in an attempt to avoid law enforcement authorities. In August 1997, Timothy took a handgun from his parents' house—where it was stored between the cushions of a chair in their bedroom—and used it to shoot and kill police officer Eryk Heck. Officer Heck's estate filed a wrongful death action against Raymond and Patricia. The parties eventually filed cross-summary judgment motions and the trial court granted summary judgment in favor of Raymond and Patricia. The estate appealed and this Court affirmed, finding as a matter of law that

---

[4] She also notes that the original text of the proposed statute, which was revised multiple times before it passed, stated that "[a] person is immune from civil liability based on an act or omission related to the storage or monitoring of a firearm that is used by a third party in the commission of a crime." H.B. 1110, 113th Leg., 2d Reg. Sess. (2004). This language, Nicholson argues, is more consistent with Lee's current interpretation. That the legislature declined to pass this version shows that Nicholson's interpretation of the statute is correct, according to her.

Raymond and Patricia "did not owe a duty to safely store and keep the gun at issue." *Id.* at 201.

[12] Our Supreme Court granted transfer and reversed the trial court's summary judgment order. 786 N.E.2d at 272. In finding that Raymond and Patricia *did* owe a duty to Officer Heck, our Supreme Court relied primarily on the facts that Timothy's parents were aware of their son's desperate frame of mind and history of criminal behavior and that there is a strong public policy concern that weighs in favor of recognizing a duty for gun owners to safely store their weapons. *Id.* at 269-70. The Court also declined to find that Timothy's killing of Officer Heck was an intervening act that broke the causal connection between the Stoffers' negligence and the death of the officer:

> In this case, a gun owner's duty to safely store and keep his/her firearm protects against the very result the trial court ruled was an intervening act—that a third party would obtain the firearm and use it in the commission of a crime. Denying recovery because the very act protected against occurred would make the duty a nullity.
>
> Guns are dangerous instrumentalities that in the wrong hands have the potential to cause serious injuries. It is a responsible gun owner's duty to exercise reasonable care in the safe storage of a firearm. . . .
>
> Accepting the acts set forth in the affidavits submitted, we conclude that summary judgment is improper. It is alleged that the Stoffers[] stored their handgun between the cushions of a chair in their bedroom. It remains to be seen whether this constituted reasonable and ordinary care in this situation. The

> Stoffers argue that they did not show Timothy where the gun was hidden, but this is not dispositive. The question is whether leaving a loaded handgun in a hidden but accessible location was reasonable under these facts. This determination is a question for the jury.

*Id.* at 271.

[13] The *Estate of Heck* decision was published in April 2003, with rehearing denied in July 2003. The very next legislative session, beginning in January 2004, was when our General Assembly considered and enacted Indiana Code section 34-30-20-1. The statute's effective date was March 17, 2004—less than one year after *Heck*. We can only conclude, given this timeline, that the legislature enacted this statute in direct response to *Estate of Heck*.

[14] When viewed through this lens, it becomes apparent that the General Assembly intended to shield gun owners from liability for failing to safely store and keep guns, when the gun that was unsafely stored is procured by a crime and then later used to commit another crime. And notwithstanding Nicholson's creative argument, the text of the statute likewise supports this conclusion. A gun owner is immune from liability "based on an act or omission *related to* the use of a firearm" by another person if the firearm was procured by a crime. I.C. § 34-30-20-1 (emphasis added). It cannot seriously be questioned that Lee's failure to safely store his gun is "related to" C.O.'s later use of that same gun. In other words, the statute immunizes Lee from liability *both* for the acts of C.O. *and* for his own failure to properly store the gun.

In support of her argument, Nicholson directs our attention to *Hinshaw v. Board of Commissioners of Jay County*. 611 N.E.2d 637, 639 (Ind. 1993). In *Hinshaw*, our Supreme Court considered whether Jay County was immune from liability for a car accident. At the time, Indiana Code section 34-4-16.5-3(9) provided that "a governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . the act or omission of someone other than the governmental entity employee[.]"[5] *See id.* at 640 (noting that "[t]he introductory phrase of the statute 'if a loss results from' does *not* mean 'if a loss also results from'") (emphasis original). The county argued that this statute rendered it immune from liability even though there were allegations that the county itself was negligent with respect to signage and maintenance of the intersection at which the accident occurred.

Our Supreme Court disagreed. As a general matter, the Court found that a governmental entity is immune from liability pursuant to similar statutes only when the liability is based on "the act or omission of a third person not within the scope of employment as a government employee." *Id.* at 641. In *Hinshaw*, however, because the claims were grounded on allegations of the county's own negligence, and because "the [statute's] circumstances (conduct of 'someone other than the governmental entity employee') do not encompass or directly relate to the acts or omissions upon which the plaintiffs are basing their

---

[5] The statute has since been recodified as Indiana Code section 34-13-3-3(9).

claim . . . such conduct of third persons does not give rise to the immunity provided by [the statute]." *Id.*

[17] We find *Hinshaw* to be inapposite to this case, largely because the statutes at issue are so different. Specifically, the language of the statute in *Hinshaw* is clear that immunity attaches only when the claim is based on the negligence of another. Therefore, if the basis for the claim was the negligence of the county itself, the statute did not apply. Here, in contrast, the statute is broader in scope and application, providing that immunity attaches for acts "related to" the use of the firearm by another person. Consequently, we do not find *Hinshaw* to be relevant to this case.

[18] Finally, Nicholson directs our attention to another statute related to the use of firearms, arguing that it supports her position in this case. *See Hall Drive Ins., Inc. v. City of Fort Wayne*, 773 N.E.2d 255, 257 (Ind. 2002) (noting that where statutes address the same subject, we harmonize them when possible). She points to Indiana Code section 35-47-2-7(a), which provides that "a person may not sell, give, or in any other manner transfer the ownership or possession of a handgun or assault weapon to any person under eighteen (18) years of age." Under this statute, the transfer of possession to a minor does not have to be done intentionally or knowingly—it is a strict liability statute. Nicholson argues that Lee's interpretation of Indiana Code section 34-30-20-1 is in direct opposition to the purpose of section 35-47-2-7 because if his interpretation is adopted, gun owners

would be immunized for exactly what is prohibited by IC § 35-47-2-7—negligently transferring their firearms to minors by leaving guns unattended within reach of children. For example, under [Lee's] interpretation, a gun-owner is allowed to leave his loaded handgun on a playground in the presence of children and have no civil responsibility for any resultant fatalities when a curious child takes the firearm and shows it to his friends.

Appellant's Br. p. 17. Nicholson insists that this result is not the intent of the legislature because it is inconsistent with the strict liability approach of Indiana Code section 35-47-2-7.

[19] We disagree, finding the two statutes easy to harmonize. While *transferring* a firearm to a minor is a strict liability offense, immunity is granted to gun owners when the firearm is *taken* through commission of a crime and without the gun owner's knowledge or consent. We disagree with Nicholson's claim that negligently storing a handgun such that it is easily accessible by children could be found to be a "transfer" of the gun subject to strict liability. Similarly, in the playground hypothetical posed above, immunity would not attach because in taking the abandoned gun, the child would not have committed one of the enumerated crimes. Ultimately, we find that the conclusion that immunity is granted to gun owners under the circumstances covered by Indiana Code section 34-30-20-1 does not contradict the purpose of the prohibition against transferring guns to minors.

[20] In sum, we find that both the plain language of Indiana Code section 34-30-20-1 as well as the fact that it was clearly enacted in response to our Supreme Court's

decision in *Estate of Heck* support the trial court's order granting judgment on the pleadings to Lee. As a matter of law, he is immunized from liability in this case, whether the focus is on C.O.'s actions or Lee's own failure to store his gun safely and properly.

[21] The judgment of the trial court is affirmed.

May, J., and Tavitas, J., concur.